[No. 28801.   Department One.   May 5, 1943.]

*In the Matter of the Estate of* GEORGE W. THOMAS, *Deceased.*

MARY E. THOMAS, *Appellant,* v. A. J. THOMAS, *Respondent and Cross-appellant.*[1]

[1]Reported in 136 P. (2d) 1017.

*Underwood & Campbell,* for appellant.

*Pettijohn & McCallum,* for respondent and cross-appellant.

ROBINSON, J.—This case involves the construction of the will of George W. Thomas, who died August 5, 1940. The will was executed many years before, December 29, 1908, at which time the testator was fifty-three years of age. On March 5, 1912, a codicil was added, appointing A. J. Thomas, a brother of the testator, executor. The record does not disclose the nature and extent of testator's property at the time the will was made. This, however, is, perhaps, of no great importance, since the will speaks as of the time of death. The widow claimed, and was allowed, the right of administering the community property, which has an inventoried value of $153,013.17, and the executor was duly authorized, by court order, to administer the separate estate, which inventoried $19,430. The two matters were consolidated for the purpose of distribution.

Upon the hearing of the final accounts, the widow claimed her half of the community property, and a life estate in the other half thereof and in all the separate property. The executor, on the other hand, claimed that one-half of the community property and all of the separate property should be distributed to him as a trustee under the will. He also prayed for the partition of the community property in kind, relying upon Rem. Rev. Stat., § 1533 [P. C. § 9795].

The trial court, in a comprehensive memorandum opinion, fully recognizing the difficulty of the principal question, adopted the theory of the executor and entered a decree of distribution in accordance therewith, refusing, however, to make the partition prayed for, on the ground that, without Mrs. Thomas's con-

sent, the court had no jurisdiction to do so. Both parties have appealed, Mrs. Thomas, from the disposition made to the executor, and the executor, from the court's ruling that it had no jurisdiction to order the partition prayed for.

The appellant states the question involved, as follows:

"Did the decedent, George W. Thomas, by his will intend to create a life estate in favor of his wife, Mary E. Thomas, the appellant, or did he intend to leave his estate in trust with A. J. Thomas as trustee?"

We quote those portions of the will which must be considered in answering this question:

"Third. After the payment of all my just debts I will, devise and bequeath to my beloved wife Mary E. Thomas, for life, all my property real, personal and mixed, of which I die seized, hereby directing that the annual interest, rents and profeits arising for my said estate be used to such an extents as is or may become necessary for the maintainance, support, board and clothing and as may be necessary to the comfort and well-being of my said wife."

"Fourth. I direct my executor that in case there accumulates a surplus of cash either from the rents and profeits of my estate after paying for the mintenance and support of my wife or from the collection of loans accounts or sale of personalty that such proceeds or accumulations shall be loaned out on first Mortgage security, said Mortgages to be executed on good wheat lands and to an amount not greater than 40 percent of the value of said lands in each case. In other words said loans shall be made upon first class wheat lands with an Abstract showing perfect title in the borrower, who shall execute to my executor a first mortgage securing said loan as evidenced by note, the amount of which note and Mortgage shall represent not to exceed 40 percent of the value of land so mortgaged."

Paragraph five devises the property to certain named heirs after the death of the decedent's wife.

Paragraph six devises the property to the same heirs in the event that his wife should precede him in death. Paragraph seven appoints the executor.

"Eighth. I direct my executor to exercise a supervisory care over my estate consistent with my wife's life estate if living, that my estate be in no way encumbered or mortgaged, and that final ditribution be made with all possible dispatch, and that my executor have and be paid a reasonable and fair compensation for his services performed as such executor the same to be fixed and determined by the Court."

We may say, at the outset, that we agree with the trial court that the case presents a close and difficult question. There is little or nothing in the relationship of the parties that will assist in its solution, other than that the surviving spouse would ordinarily be the primary object of the testator's bounty. In this case, however, the estate is so large that this fact should be given but little weight. Furthermore, every case of this kind has an individuality of its own. A word used in one will may mean something quite different when used in another, depending upon the context, which always varies, and for that reason decisions in previous cases are rarely helpful, except as they state and illustrate the application of certain rules of construction. However, as was said by Judge Ellis in pronouncing the opinion of the court in *Peck v. Peck,* 76 Wash. 548, 553, 137 Pac. 137:

"There are certain broad canons of interpretation which have become so thoroughly established by judicial announcement that they may be said to have passed into the body of substantive, or at least definitive, law upon the subject."

The fundamental rule of construction is that a court, in construing a will, will endeavor to give effect to every part of it. It follows that, within all reasonable limits, the courts will endeavor to reconcile

two apparently inconsistent provisions of a will, rather than to wholly disregard one or the other, and it is a well-recognized rule that an unambiguous provision will not be controlled or modified by a doubtful or ambiguous provision found elsewhere. It is also a rule that, where the effect of a later provision is to cut down an earlier gift to a lesser estate, such effect will not be given to the later provision unless it is as clear and unambiguous as the original provision. 2 Page on Wills (Lifetime ed.), p. 870, § 932; 2 Schouler on Wills, Executors and Administrators (6th ed.), p. 1035, § 900; 69 C. J. 114.

We requote the third paragraph of the will:

"Third. After the payment of all my just debts I will, devise and bequeath to my beloved wife Mary E. Thomas, for life, all my property real, personal and mixed, of which I die seized, . . ."

If that were all, and the sentence came to an end with the word "seized," the rules above referred to would, despite certain language in other paragraphs, be determinative of the question raised by the appeal. But the sentence goes on:

· ". . . hereby directing that the annual interest, rents and profeits arising *for* my said estate be used to such an extents as is or may become necessary for the maintainance, support, board and clothing and as may be necessary to the comfort and well-being of my said wife."

▉ The respondent contends that the paragraph must be construed as an entirety, and, as so construed, no legal life estate is devised in clear and plain terms, but that an equitable life estate is so described. Hence, it is contended that the rule that, where a gift or an estate is given in clear and plain terms, it will not be cut down to a lesser estate by subsequent provisions that are not equally clear and certain, does not apply.

But even if the force of this argument be conceded, the legal estate must always be vested in someone, and there is no language anywhere in this will devising decedent's legal interest to anyone else, other than his wife, until after her death (fifth paragraph) or in the event that his wife shall predecease him (sixth paragraph). The fact that there is no devise to the executor is not determinative; nor is the fact that A. J. Thomas is called executor, and not trustee, determinative.

We quote 3 Pomeroy's Equity Jurisprudence (5th ed.), p. 1021, § 1011:

"Although no trust is declared in express terms, nor even mentioned, still the intention of the donor to create the trust, and the existence of the trust itself, may be necessarily inferred from the powers and authority given to the grantee, and in case of wills, even where no estate is directly devised to the executors, but the whole estate is *apparently* given to the beneficiaries, the trust may be necessarily inferred from the powers and authority conferred upon the executors, and thus from a construction of the entire will the intention may be shown that the executors are to take the legal title as trustees of an express active trust. The peculiarity of this case is that the trust arises, and the legal estate is vested in the trustees, although the will contains no disposition by which the legal estate is in terms devised to them. The doctrine is settled that in dispositions of such a nature, although there is no devise in terms to them, the authority conferred by the will upon the executors to lease, rent, repair, insure, pay taxes, assessments, and interest, and otherwise manage the trust property, and to pay over the *net* income to the devisees or legatees, necessarily carries the legal title to the executors, and creates an express active trust in them. It is a familiar doctrine that where land is conveyed or devised to trustees, and they have active duties to perform, they take the legal estate; the converse is also generally true, that where active duties are prescribed for executors, which could

not be performed unless the legal estate is vested in them, they are in fact made trustees, and necessarily take the legal estate for the purposes of the trust."

Relying upon the above statement of the law, which is a correct reflection of the decided cases, the respondent contends that a trust must be inferred here from the powers granted in the fourth paragraph of the will, and particularly from the words therein "after paying for the *mintenance* and support of my wife," when considered with the use of the word "annual" in the third paragraph, and it is further argued that the eighth paragraph lends support to this contention.

The trial court states, in its memorandum opinion, that it finds two California cases which rather closely fit the contention of each party: *In re Shaw's Estate,* 198 Cal. 352, 246 Pac. 48, and *In re Ogden's Estate,* 78 Cal. App. 412, 248 Pac. 680. In our opinion, neither of these cases lends any support to respondent's position, except in sustaining the well-settled principle that, in some cases, a trust may be inferred, even though there is no devise to the claimed trustee, and even though he is designated in the will merely as executor. In the first of the cases, a trust was inferred and established, but the language of the will was very different from the language of the will in this case, and the duties cast upon the executor were much more extensive and were clearly to be performed over a long period of time. The case is exactly of the type dealt with in the section hereinabove quoted from Pomeroy, and, since it appears to have considerably influenced the decision of the trial court, we feel warranted in quoting from it at some length. The will read, in part:

"Thirdly: I give, devise and bequeath unto my adopted daughter, Catherine Gray Peterson, . . . a life interest in and to one-half of the rest, residue and remainder of my estate, . . . the income on said

life estate to be paid quarterly to her by my executors, promptly on the first day of each and every quarter during the term of her natural life."

A similar bequest of the other half interest in the residue was made to Helen Peterson Lightfoot,

". . . the same [the income] to be paid to her by my executors promptly on the first day of each and every quarter during the term of her natural life."

In subsequent portions of the will, the executors were given power to convert the whole estate into cash, and, after making all legal disbursements in the administration of the estate, were directed to keep the funds of the estate on deposit in certain banks therein named, and that they should be kept there during the lives, respectively, of the two devisees. The executors appointed were, respectively, the president and secretary of one of these banks, and it was provided that, in case of the death of either of them, his successor in office in the bank should succeed him, the testatrix stating:

". . . it being my wish, will and intent that my estate shall be managed and handled by the president and secretary of the said First National Bank of Lodi."

The court held that, although there was no devise to the executors and although they were called executors instead of trustees, nevertheless, it must be inferred that a trust was intended. It said further that an executor might well have been directed to convert all the estate into cash, and continued:

"But this will goes much further than that by the provisions thereof which postpone the final disposition of the *corpus* of this estate in whatever form until the termination of the lifetime of both of the two devisees who are to receive the income thereof during the lives of each of them and of the survivor. The record herein discloses that in the year 1919, at the time of the execution of said will, Catherine Gray Peterson, one of said

devisees, was of the age of about fifty-three years; that her daughter Helen Peterson Lightfoot, the other of said devisees, was at said time of the age of under thirty years, and that Catherine Lightfoot, the devisee of the remainder of said estate after the termination of both of the aforesaid life interests therein was of the age of about four years. It will thus be evident without any close computation based upon mortality tables that the persons named in said will as the executors thereof have, by the terms thereof, been invested with the possession, management, and control of the entire *corpus* of said estate for a period of time far outreaching the ordinary period to be occupied in the administration of such an estate. During such period thus extending far beyond the scope and need of administration and occupying the entire lives of the two devisees of said life interests in said estate the said persons designated as executors in the decedent's said will are to exercise a degree of dominion over the whole of the properties of said estate, coupled with such exclusive possession and power of management thereof as is usually exercised by trustees and as ought to be surrounded by such safeguards as the law imposes upon trustees under like conditions."

We do not see how the court could have arrived at any other decision. The testatrix did not use the words "life estate," but "a life interest in." It is clear, from these words and those which follow, that she meant that the devisees were to receive, as long as they should live, only the income from property that was to be held and managed by other persons over a period of years; said income to be paid to them by those persons promptly at the beginning of every quarter. It is equally clear that persons performing such duties are, in fact, trustees. But, in this case, the testator, in the third paragraph of the will, devised to his wife, "for life, all my property real, personal and mixed, of which I die seized," and in the eighth paragraph of the will, after employing the language relied upon by respond-

ent, he describes the gift to his wife as "my wife's life estate."

The other California case, *In re Ogden's Estate, supra,* is, as the court indicated in its memorandum opinion, favorable to the appellant. The will in that case, after disposing of certain property, provided, as follows:

"I leave all the rest of my estate money in bank - bonds & real estate to my two nephews. E. Ogden Hook & Robert A. Hook the interest to be paid them until they have reached the age of - 27 - years - at the age of 27, each one is to be given his share - . . . I appoint my brother G. W. Ogden & my brother in law G. Edward Hook as executors of the estate without bonds - in case of their death I appoint my nephew - Ogden Hook."

A decree was entered distributing that portion of the property to G. Edward Hook, as trustee, and he was directed to pay to each of the beneficiaries one-half of the income from the trust property until he should reach the age of twenty-seven years. On appeal, the court held:

"Respondents concede that the part of the decree from which the appeal is taken is erroneous. It is manifest that a trust was not created by the terms of the will. As was said in *McCloud v. Hewlett,* 135 Cal. 361, 368 [67 Pac. 333, 336], the court had no 'power or jurisdiction to carve out a trust from anything to be found in the will, and, independent of the will, it had no power to create the trust.' It may be that the testatrix intended to create a trust, but the question for the court to determine is not what she intended to declare in her will, but what she intended by what she did declare therein. *(Title Ins. & Trust Co. v. Duffill,* 191 Cal. 629, 642 [218 Pac. 14].) The facts of this case are unlike those in *Estate of Shaw,* 198 Cal. 352 [246 Pac. 48], where it was held that the terms of the will there in question were sufficient to create a trust even though the word 'trust' or 'trustee' was not used. The prop-

erty described in the residuary clause of the will herein should have been distributed directly to E. Ogden Hook and Robert A. Hook."

Looking at the will as a whole and attempting to give effect to every part thereof, as it is our duty to do, we think that it must be held that it reflects no clear intention to create a trust.

It is by no means clear that the second portion of the third paragraph of the will, as we have hereinabove divided it, was intended as a direction to the executor. It is not so expressed, and the writer of the will knew how to make such a direction. The second paragraph of the instrument begins: "I direct my executor hereinafter named, etc.," and, although the language used by the testator in the second division of the third paragraph is directory, we think that there is as much, if not more, reason to regard it as a somewhat strongly worded recommendation to his wife to conserve the life estate devised to her by limiting her expenditures to the things necessary for her comfort and well-being, as there is to regard it as a direction to the executor.

The fourth paragraph, it is true, sets up a rather elaborate set of powers for an executor. It is said: Why should the testator direct the executor to accumulate funds for the maintenance and support of the wife during his executorship, since the statutes provide for that? But the will bears internal evidence that, if it was written by a lawyer, he was not skilled in probate law. It is also urged that the word "annual" in the third paragraph shows that it was intended that A. J. Thomas was to be in control of the property far beyond the probate period. This may have been a mere precaution. Perhaps, the lawyer, or realtor, who drew the will, was familiar with the well-known fact that, in actual practice and despite the limitation of the statutes, estates, for one reason or another, frequently remain under executorship for years.

The points made by the respondent in regard to the fourth paragraph are relevant and material to the inquiry, but we do not think that they warrant a court in erecting a trust where no trust is expressly declared, on the theory that the executor is granted powers that only a trustee can exercise.

It is contended by the respondent that his position finds support in the eighth paragraph of the will. It is said, in substance, that the executor is therein granted supervisory powers over the estate, and that, since the law provides that an executor shall be compensated, the provision that "my executor have and be paid a reasonable and fair compensation for his services performed as such executor the same to be fixed and determined by the Court," must be considered as providing for services other than those performed by an executor, namely, the supervisory care directed in the first line of the paragraph. But the supervisory care therein provided for is over "my estate," not over the widow's life estate, and the fees to be determined by the court are for services performed "as such executor." We do not follow respondent's contention as to the eighth paragraph. On the other hand, it is our opinion that that paragraph lends strong support to the appellant's position. We think the real intention of the paragraph can be expressed as follows:

If my wife survives me, then I direct that my executor shall exercise supervisory care over my estate not inconsistent with the life estate I have devised to her, that he shall not encumber or mortgage my estate, and shall distribute it with all possible dispatch, and that he shall be paid a reasonable compensation for his services as executor, the same to be fixed and determined by the court.

We attach no significance to the fact that the testator provides that the executor should be paid a reasonable

compensation for his services, the same to be fixed by the court. That is a common provision in wills.

In view of the disposition which we have concluded to make of the appeal, it is unnecessary to discuss the question raised by the cross-appeal.

The decree appealed from is reversed, in so far as it distributes the separate property and community share of the decedent to A. J. Thomas, and the trial court is directed to enter a decree in harmony with this opinion.

MILLARD, STEINERT, JEFFERS, and MALLERY, JJ., concur.

---

June 21, 1943. Petition for rehearing denied.

