[Nos. 30229, 30230. Department Two. November 20, 1947.]

*In the Matter of the Estate of* ETTA MARIE SEARL, *Deceased.*
*In the Matter of the Estate of* HOMER I. SEARL, *Deceased.*[1]

[1]Reported in 186 P. (2d) 935.

*Herbert Ringhoffer,* for appellant.

*H. N. Woolson* and *Roy R. Cahill,* for respondents.

BEALS, J.—Homer I. Searl and Etta Marie Searl were, for many years, husband and wife and residents of Walla Walla county. September 30, 1937, Mrs. Searl made her will. After directing payment of her debts, expenses of her last sickness, and funeral expenses, she devised and bequeathed to her husband, Homer I. Searl, all the rest, residue, and remainder of her property, providing:

"However, in event that my husband and I should meet death by accident or otherwise at the same time or approximately the same time, then it is my desire and will that all such residue and remainder of my estate is to pass to, and in the event of such happening I do give, devise and bequeath the same unto, my sister, Mrs. Anna Florence Conwell, who is now a resident of Columbus, Ohio."

She appointed Mr. Searl the executor of her will, directing that he administer her estate without the intervention of a court.

Etta Marie Searl died, in Walla Walla, May 19, 1945, the value of her estate being estimated at about five thousand dollars.

June 19, 1945, Homer I. Searl filed, in the office of the clerk of the superior court for Walla Walla county, his petition asking that Mrs. Searl's will be admitted to probate and that his appointment as executor thereof be confirmed. On the same day, the will was admitted to probate, and Mr. Searl was appointed executor thereof, and it was or-

dered that letters testamentary should issue to him upon filing his executor's bond in the sum of one thousand dollars.

Homer I. Searl died July 5, 1945, not having qualified as executor of Mrs. Searl's will. Thereafter, George W. Roberts, Esquire, who had represented Mr. Searl as his attorney, filed his petition stating the foregoing facts and asking that he be appointed administrator with the will annexed of the estate of Etta Marie Searl. On August 3, 1945, an order was entered appointing Mr. Roberts as such administrator. Mr. Roberts, as administrator of the estate of Etta Marie Searl, deceased, filed his final report and petition for distribution July 22, 1946, asking that Mrs. Searl's estate be distributed to the administrator of the estate of Homer I. Searl, deceased.

Anna Florence Conwell (Mrs. Searl's sister, and the person mentioned in the paragraph of Mrs. Searl's will quoted above) filed exceptions to the petition for distribution, basing her objection upon the ground that Homer I. Searl died July 5, 1945, and that his death occurred at "approximately the same time" as Mrs. Searl's death, and that, under the terms of her will, Mrs. Searl's estate should be distributed to Anna Florence Conwell.

The matter came regularly on to be heard before the court, September 16, 1946, George W. Roberts, Esquire, appearing as counsel for himself as administrator with the will annexed of the estate of Etta Marie Searl, deceased, and as attorney and administrator with the will annexed of the estate of Homer I. Searl, deceased. Anna Florence Conwell appeared by her counsel, and the heirs at law of Homer I. Searl appeared by counsel. Evidence was introduced, and, after argument by counsel for the respective parties, the trial court entered a decree of distribution, distributing the estate of Etta Marie Searl to George W. Roberts, as administrator of the estate of Homer I. Searl, deceased, "to be held by him in trust for the legal heirs of the Homer I. Searl estate."

From the decree of distribution, Anna Florence Conwell appealed to this court.

As above stated, Homer I. Searl died July 5, 1945, leaving a last will and testament, dated September 30, 1937, whereby he devised all of his property (save one dollar bequeathed to his mother) to his wife, Etta Marie Searl. Mr. Searl's will contained a provision, identical in effect with that in Mrs. Searl's will quoted above, stating that, in case his wife and he "should meet death by accident or otherwise at the same time or approximately the same time," he devised and bequeathed his property to Anna Florence Conwell, his wife's sister.

Mr. Roberts filed Mr. Searl's will, together with his petition that he be appointed administrator with the will annexed. Mr. Searl's will was admitted to probate, and Mr. Roberts appointed as administrator with the will annexed. In due time, Mr. Roberts, as such administrator, filed his final account and petition for distribution in Mr. Searl's estate, stating that, by the terms of Mr. Searl's will, "all of his estate appears to be devised to Anna Florence Conwell, the sister of his wife, Etta Marie Searl, deceased," the administrator praying that the residue of the estate remaining in his hands be distributed to her.

By stipulation of all parties, namely, George W. Roberts, as administrator of both estates, Mrs. Conwell, and Elmer Searl, Mr. Searl's brother, and Iona Lowery, Bertha Russell, Sylvia Kirk, and Myrtle Wery, Mr. Searl's sisters, the two proceedings were consolidated for hearing before the superior court.

January 30, 1947, the court signed an order approving the final account in the estate of Homer I. Searl, deceased, and a decree of distribution awarding the property of the estate to Mr. Searl's brother and sisters, from which decree Anna Florence Conwell appealed to this court.

By order of the chief justice, dated April 2, 1947, the appeal in the matter of the estate of Homer I. Searl was consolidated with the appeal in the matter of the estate of Etta Marie Searl for all purposes before this court. Appellant's brief was filed after the order consolidating the cases

for hearing was entered in this court, and the assignments of error apply to both cases.

Appellant assigns error upon the holding of the trial court that Mr. and Mrs. Searl did not die at approximately the same time, one having died May 19, 1945, and the other July 5, 1945. Error is also assigned upon that portion of the decree appealed from distributing the property of the Etta Marie Searl estate to the administrator of the Homer I. Searl estate, instead of awarding it to Anna Florence Conwell. Appellant also assigns error upon the awarding of the property of the Homer I. Searl estate to the heirs of Homer I. Searl, instead of to her.

Neither Mrs. nor Mr. Searl met death by accident. If the trial court was correct in holding that Mr. Searl did not die "at the same time or approximately the same time" his wife died, the decrees of distribution, from which appellant has appealed, should be affirmed.

Funk & Wagnalls New Standard Dictionary, under the word "approximate," defines "approximately" as "Very nearly but not absolutely." The Oxford Dictionary, among other definitions, defines the word "approximate" as "Very near, in position or in character; closely situated; nearly resembling."

The question to be here determined is whether or not Mr. Searl's death, which occurred forty-seven days after the death of his wife, should be held to have occurred at approximately the same time as his wife's death.

The evidence discloses that both Mr. and Mrs. Searl had, in time of need, received financial assistance from Mrs. Conwell, and that they both sincerely appreciated her generosity.

Mr. Roberts, the administrator of both estates, testified that both of the wills had been drawn by an attorney who died prior to Mrs. Searl's death; that the widow of this attorney had delivered these wills, with others which had been in the custody of her deceased husband, to Mr. Roberts, informing the persons who had made the wills that they had been so delivered; that Mr. and Mrs. Searl had called at

Mr. Roberts' office, asking if he had their wills, and, when he informed them that they were in his possession, they examined them and stated that the wills were in accordance with their wishes; that, about a week after Mrs. Searl's death, Mr. Searl retained the witness to probate her will; that the witness prepared the petition for probate of the will and, after Mr. Searl had signed it, the petition was filed with the court; that, after Mrs. Searl's death, the witness had had a conversation with Mr. Searl, in connection with her estate and other matters, and told him that he should make a new will, but that Mr. Searl had said that the will was in accordance with his wishes, that Mrs. Conwell had befriended them, and that he and his late wife had wished her to have "whatever was left when they died." Apparently, Mr. Searl did not follow his counsel's suggestion and make a new will.

It is not contended here that the facts disclose any situation which would render the two wills "mutual wills," which would have prevented the survivor from executing a new will omitting appellant from its provisions.

Other testimony was introduced by friends of Mr. and Mrs. Searl, in which the witnesses stated that, after Mrs. Searl's death, they had had conversations with Mr. Searl in which he stated that both he and his wife had desired that Mrs. Conwell have their property.

██ Appellant relies upon the well-known principle of law that a will will be construed, if possible, so as to avoid intestacy or partial intestacy, citing *In re Lotzgesell's Estate*, 62 Wash. 352, 113 Pac. 1105; *In re Peters' Estate*, 101 Wash. 572, 172 Pac. 870, and *In re Sharpnack's Estate*, 138 Wash. 473, 244 Pac. 715.

██ Appellant argues that Mr. and Mrs. Searl intended that all of the property they owned be enjoyed by the survivor, but that, if the survivor failed to make a new will, then all of the property was to go to Mrs. Conwell; and that, as Mr. Searl did not make a new will, the word "approximately," as used in the wills, should be construed to include the period between Mrs. and Mr. Searl's deaths. We cannot follow this argument, as it would probably be used had

one of the parties died a year or longer after the death of the other. In connection with the facts of this case, the word "approximately" must be construed and applied in accordance with established legal principles. It would have been very easy for Mr. and Mrs. Searl to have made wills which would have carried into effect their wishes as attributed to them by appellant. They did not make such wills, and the question presented must be determined in accordance with sound and well-established principles of law.

Provisions are frequently contained in wills made by a husband and wife, or near relatives, which provide for the contingency that, if the testator and beneficiary suffer an accident resulting in the death of both, no question of fact may arise which will require a judicial determination as to which of the two happened to survive the other. In the case at bar, neither Mrs. nor Mr. Searl died as the result of an "accident."

Mr. Searl died forty-seven days after the death of his wife. Appellant contends that the trial court erred in holding that his death did not occur at "approximately the same time" that his wife died.

█ It is, of course, true, as contended by appellant, that courts favor testacy rather than intestacy. This rule has been repeatedly recognized by this court in the cases cited by appellant, referred to above. This principle, however, has its well-defined limitations and does not relieve courts from the obligation to construe the language of a will according to the legal effect of the words used. *Andrews v. Applegate*, 223 Ill. 535, 79 N. E. 176; *Bond v. Moore*, 236 Ill. 576, 86 N. E. 386.

In the case of *Peck v. Peck*, 76 Wash. 548, 137 Pac. 137, this court, speaking through Ellis, J., said:

"It is, of course, a rule to which there can be no dissent that, in construing a will, the dominant intention of the testator, as manifested in his will, must, if lawful, be given effect; but the intention which controls is that which is positive and direct, not that which is merely negative or inferential."

In the case of *Bill v. Payne,* 62 Conn. 140, 25 Atl. 354, the supreme court of Connecticut, in construing a will, said:

"Counsel for the surviving legatees say, and say truly, that in construing wills courts will seek for and give effect to the intention of the testator. We apprehend however that the intention which controls is that which is positive and direct, rather than negative and consequential. That is, if property is given to A for the purpose of disinheriting B, the intention to give is of more importance than the intention not to give. In this case the intention to give the property to the parties named is primary, direct and positive, and is the intention which must prevail; it is that which the court will endeavor to carry into effect without reference to the motive which prompted it. The intention that Mrs. Payne should take nothing by the will is negative in its character, is incidental and consequential. That is an intention that the court will not enforce, except as it enforces the positive provisions of the will. Conceding then that the testatrix intended to disinherit her sister, it must be remembered that she could only do that by effectively giving her property to others. That she attempted to do. That she failed was owing to events which occurred after making her will,—events for which she made no provision as she might have done. It frequently happens that legatees die during the lifetime of the testator. The testatrix could have provided for such a contingency by giving it to the survivors, or to other parties. She did neither. There is therefore some presumption that she intended that the law should settle the matter. That presumption is strengthened by the fact that she had an opportunity to change her will after one or more of the legatees had died, and failed to do so. An intent inferred from the consequences of an express provision of a will, when the language used is free from doubt, will not be permitted to affect the construction of that language; much less will it be permitted to nullify a rule of law applicable to an express bequest. The testatrix bequeathed her property to collateral relatives, some of whom died during her lifetime. The ordinary rule is that the legacies to such deceased relatives lapse and fall into the residuum or become intestate estate, as the case may be. The implied intent to disinherit nearer relatives cannot prevent the application of that rule."

Parol evidence offered by appellant was admitted by the trial court over respondents' objection. This evidence, if admissible at all, affords no basis for reversal of the decrees appealed from.

■ The wills before us must be construed as written. In the case of *Feeney v. Lufkin,* 159 Wash. 82, 292 Pac. 257, we said:

"The applicable rule is well stated in 28 R. C. L., Wills, § 243, pp. 269-270, as follows:

" 'Parol evidence is not admissible to show that the testator meant one thing when he said another, or to show an intention not expressed in the will itself, or to aid in making a will which the testator intended to but did not in fact make. This rule is applied especially where the language of a will is plain and unambiguous. However clearly an intention not expressed in the will may be proved by extrinsic evidence, the rule of law requiring wills to be in writing stands as an insuperable barrier against carrying the intention thus proved into execution.' "

The case of *Glover v. Reynolds,* 135 N. J. Eq. 113, 37 A. (2d) 90, is also in point on this question.

In 2 Page on Wills 810, § 919, appears the following text:

"In construing a will, it will be presumed that the testator understood and intended the provisions thereof. As the courts are careful to discover and enforce testator's intention, but not to make a new will for testator, it follows that they constantly refuse to ascertain testator's intention except from the words which he used in his will, together with such extrinsic evidence as is admissible. The question always before the mind of the court is, not what should testator have meant to do or what words did he mean to use, but what is the reasonable meaning of the words which he has actually used."

At p. 875, § 933, of the same volume, it is said:

"It will be presumed that testator knew and intended the meaning of the words which he uses in his will, unless the context, surrounding circumstances, and other admissible aids to construction show a contrary intention.

"It will be presumed that the words which are used in a will are used in their usual and popular meaning, unless it appears from the context that some other meaning is intended."

In 2 Schouler on Wills, Executors and Administrators (6th ed.) 984, § 865, the rule of construction is stated as follows:

"Words in general, whether technical or popular, are to be taken in their plain and usual sense, unless a clear intention to use them in another sense can be collected and that sense ascertained besides. All other things being equal, the natural and literal import of words and phrases is presumed to have been intended; and each word is to have its effect, if the general intent be not thwarted thereby."

The text of the same work, p. 980, § 862, is also in point:

"The court cannot make a will by construction and the court cannot make a new will for testator on the conjecture that he may have inadvertently failed to understand the force of his language used. A will cannot be construed, however, by mere conjecture as to the intention of the testator and the court cannot conjecture what his intent would be if he had contemplated a certain situation and read that intent into the will."

In the case of *American Trust & Safe Deposit Co. v. Eckhardt*, 331 Ill. 261, 162 N. E. 843, it appeared that a husband and wife had executed a joint will containing reciprocal provisions leaving the entire estate to the survivor. The joint will provided that, in the event husband and wife should die

" '. . . simultaneously, or approximately so, or in the same common accident or calamity, or under any circumstances causing doubt as to which of us survived the other,' "

the estate should vest in a trustee for purposes mentioned. The wife was seventy-one years old and the husband eighty-four. The wife died at two o'clock a. m., and the husband died during the afternoon of the next day. The document was admitted to probate as the will of the wife, but the trial court held that the document was not entitled to admission to probate as the will of the husband. The circuit court having affirmed the order of the probate court, the case was appealed to the supreme court of the state. As the deaths had not occurred simultaneously or in a common ac-

cident or calamity or under circumstances causing doubt as to which survived, it was necessary that the court consider the other contingency referred to in the will and determine whether the deaths occurred "simultaneously, or approximately so." On this question, the court said:

"The word 'simultaneously' may be taken in its strictest sense as meaning, at precisely the same instant. The word 'approximately' is in its nature indefinite. It means 'nearly,' 'about,' 'close to,' but all of these words are elastic and do not indicate with certainty the length of time which ceases to be approximate. Whether the difference of a day and a half is to be considered near to or remote from the occurrence of an event must be determined from the circumstances attending the event. The terms are relative. The meaning of the word must be considered in connection with the object of the provision. 'Approximately' certainly did not mean at the same instant, because it is distinguished from simultaneously, which does mean at the same instant. It did not mean necessarily on the same day."

The supreme court held that the deaths occurred approximately at the same time, and directed that the document be admitted to probate as the will of the husband. The decision of the supreme court was clearly correct, but the case is of interest here as showing that two inferior courts of the state had held that the deaths of the husband and wife did not occur at approximately the same time although only a few hours over a day intervened between them.

The courts of New Jersey have recently several times considered questions somewhat similar to that here presented. In the case of *Hackensack Trust Co. v. Hackensack Hospital Ass'n*, 120 N. J. Eq. 14, 183 Atl. 723, a suit brought for the purpose of obtaining the construction of a will, it appeared that the mother had bequeathed a considerable portion of her estate to her daughter, with the following proviso: " ' . . . should my said daughter predecease or not survive me or should she and I perish in a common disaster, she leaving no issue her surviving, I give, . . .' " the property bequeathed to the daughter to other named parties. Mother and daughter were fatally injured in an automobile accident. The mother died within an hour, and

the daughter about thirteen hours later. The chancellor held that the mother and daughter did perish in a common disaster, and that the daughter did not take under her mother's will.

In the case of *Shippee v. Shippee,* 122 N. J. Eq. 570, 195 Atl. 728, the chancellor construed the will of Anna Shippee, by which she bequeathed her estate to her sister Mary, the will then providing that, " 'In case my said sister Mary L. Shippee should die simultaneously with me, or shortly before or after me, as the result of an accident, or otherwise,' " the estate should pass to a brother. Anna died October 26, 1934, her sister Mary dying forty-one days later, not as the result of an accident. The question was whether or not the bequest went to the brother. It was argued that Mary was suffering from a fatal disease for several months before Anna's death. It was held that this fact was immaterial, it being noted that the will in question was executed several years previously. The chancellor held that Mary's death did not occur "shortly" after the death of the testatrix; that the bequest had vested in Mary, and that the clause in favor of the brother did not become operative.

In the case of *Rutherford Trust Co. v. Stagg,* 127 N. J. Eq. 541, 14 A. (2d) 514, it appeared that twin sisters had made identical wills in favor of each other, each will providing " 'In the event, however, of my said sister, . . . , and myself, both dying, through accident, while we are together, then, and in such case, I do dispose of my said estate . . .,' " and so forth. October 16, 1936, the sisters were found together in their home overcome by coal gas asphyxiation, from which they both died, one October 26th, and the other November 1st. The chancellor ruled that the provision in the wills above quoted controlled, the facts meeting the condition.

In the case of *Glover v. Reynolds,* 135 N J. Eq. 113, 37 A. (2d) 90, it appeared that a husband and wife had made mutual wills, February 23, 1938. The husband died July 30, 1942, and his widow, having taken under his will, died November 14, 1942. She left the will executed in 1938, by

which she bequeathed all of her property to her husband, who, of course, had predeceased her. The first portion of the second paragraph of her will read as follows: " 'In the event that my husband and myself die simultaneously regardless of the order of passing, I give and bequeath . . . ,' " and so forth. The will was submitted to the chancellor for construction, certain of the beneficiaries under the will contending that the testatrix intended to provide for them in the event that her husband should predecease her, as he did. Particular reliance was placed upon the presumption against intestacy. The chancellor ruled that the presumption against intestacy could not be used "to justify a revision of the clear language of the will." After her husband's death, the widow did not execute a new will, which she might have done, and the opinion states that the

" . . . court, under the guise of construing the will, will not write a new one. As has frequently been pointed out in our decisions, it may be that if she could now express her views she would wish her estate to pass to the defendant beneficiaries, but this is of no moment here."

The chancellor held, in effect, that the widow died intestate.

■ In the case at bar, Mr. and Mrs. Searl's wills were drawn by an attorney, and it must be assumed that the word "approximately," as used in the wills, was employed in its customary sense. *In re Davidson's Will*, 223 Minn. 268, 26 N. W. (2d) 223; *In re Cass' Will*, 68 N. Y. S. (2d) 666.

The supreme court of Illinois, in the case of *American Trust & Safe Deposit Co. v. Eckhardt, supra,* defined the word as "nearly, about, close to," noting that all these words were elastic and, to some extent, indefinite.

In the case of *Shippee v. Shippee, supra,* the chancellor held that the death of the sister, forty-one days after the death of the testatrix, did not occur "shortly" after the latter's decease.

■ The word "approximately" is not capable of an exact definition, but we are convinced that the trial court cor-

rectly ruled that Mr. Searl's death, July 5, 1945, did not occur at "approximately the same time" as Mrs. Searl's death, she having died May 19, 1945.

The decrees appealed from are affirmed.

MALLERY, C. J., STEINERT, ROBINSON, and JEFFERS, JJ., concur.

[1] Reported in 186 P. (2d) 908.