**Mary Snyder MONROE, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. Nos. 2196, 2437.**

United States District Court
E. D. Washington, S. D.

May 23, 1969.

Douglas A. Wilson, Yakima, Wash., for plaintiff.

Smithmoore P. Myers, U. S. Atty., Spokane, Wash., and W. Forbes Ramsey, Atty., Tax Division, Dept. of Justice, Washington, D. C., for defendant.

## OPINION

POWELL, Chief Judge.

This opinion concerns two tax cases consolidated for trial. One is for a refund of income taxes and the other for a refund of gift taxes. Both arise from the same undisputed facts.

On July 14, 1937 James V. Monroe, husband of the plaintiff, executed his Last Will and Testament. Paragraph V of the will provided:

> "There shall be reserved from my entire estate a life estate in MARY SNYDER MONROE, who shall be entitled during her lifetime to enjoy

the full benefits of said estate for her comfort, enjoyment, support, maintenance or expenditure in such manner as in her discretion will cause the remainder of her life to be most useful, giving her full right to all income from my estate or such portion thereof as she desires to use and expend and such portion of the principal of my estate as she shall desire to expend or dissipate in her own discretion."

The testator died March 27, 1939 and the will was admitted to probate. His widow duly qualified as executrix.

On October 26, 1940 the Superior Court of the State of Washington for Yakima County entered an Order Approving Final Account, Determining Heirs of Decedent, Decreeing Distribution and Discharging Executrix. That order in part provided:

"That all of the property of said estate hereinabove set forth, as well as any property hereinafter disclosed belonging to said estate be and is hereby distributed, according to the terms of the Last Will and Testament of James V. Monroe, deceased, to-wit, to Mary Snyder Monroe, as trustee for Joan Vincent Monroe, during the period of the minority of said Joan Vincent Monroe and to Mary Monroe Davis in equal undivided portions, all of which property, however, subject to a life estate in Mary Snyder Monroe, who shall be during her lifetime entitled to enjoy the full benefits of said estate for her comfort, enjoyment, support, maintenance or expenditure in such manner as in her discretion will cause the remainder of her life to be most useful, giving her full right to all income from said estate or such portion thereof as she desires to use and expend and such portion of the principal of said estate as Mary Snyder Monroe may desire to expend or dissipate in her own discretion."

To facilitate the management, conservation and growth of the estate, many of the assets were converted to cash and invested in securities which were deposited with the Puget Sound National Bank of Tacoma. The bank carried the assets in its Trust Agency Account D–168. To formalize this transfer the bank and the heirs entered into a Safekeeping Agreement. This instrument was signed on April 14, 1940 by Mary Snyder Monroe individually and as trustee for that portion of the remainder of the estate belonging to Joan Vincent Monroe, a minor. Mary Monroe Davis, an adult, signed on her own behalf.

On May 30, 1943 Joan Vincent Monroe died. Mary Snyder Monroe was her sole heir and became the owner of her interest in Trust Agency Account D–168 at Puget Sound National Bank of Tacoma. The Safekeeping Agreement continued for the benefit of Mary Snyder Monroe and Mary Monroe Davis. After the death of Joan Vincent Monroe, her mother owned a life estate in one-half of the Trust Agency Account D–168 and was the full owner of the remaining one-half.

Mary Snyder Monroe believed the interests of the estate would best be served if she gave up her right to invade the corpus of the remainder of the account funds belonging to Mary Monroe Davis. To accomplish this purpose the plaintiff on October 20, 1948 executed a document entitled "Release of Power of Appointment." The essential provisions of that instrument are as follows:

"* * * the undersigned widow of James V. Monroe, deceased, for the purpose of conforming to the intent of her late husband and thus avoid all gift and estate taxes on the life estate of the undersigned, does hereby express her intention to release her right to invade the corpus of said life estate, and does hereby release all her rights to appropriate or consume the principal of the life estate and does release said power to appoint in favor of said Mary Snyder Monroe as life tenant of the estate, and does reserve to herself only the right to the income from said life estate and the property contained therein for and during the term of her natural life. This release is executed for good and valuable consideration

and upon notice to and acceptance by the remainderman."

In the years that followed the account prospered and grew. It was diminished only by occasional withdrawals of income by the plaintiff. Periodic purchases of securities were authorized by Mrs. Monroe to assure proper growth of the account.

On February 2, 1963 a Renunciation and Release was executed by Mary Snyder Monroe in which it was stated:

"That MARY SNYDER MONROE, widow of James V. Monroe, whose date of death was the 27th day of March, 1939, does hereby renounce and release any and all rights she has under any general power of attorney [sic] created by the Will of James V. Monroe and/or by the decrees of distribution of the estate of James V. Monroe in the sovereign states of Washington and Nebraska, * * *."

The words "general power of attorney" used in this clause have been treated by the parties as referring to a power of appointment.

The next day a formal agreement was signed by plaintiff and Mary Monroe Davis. Its principal parts are as follows:

" * * * the first party for and in consideration of the sum of One Dollar in hand paid, and for the purpose of complying with the intent and spirit of the testamentary devise and bequest of her deceased husband, James V. Monroe, and for the purpose of transferring to Mary Monroe Davis all rights, title and interests, if any, that may have been retained by her subsequent to her renunciation of the general powers of appointment, does by these presents assign, transfer and set over unto Mary Monroe Davis, second party, any and all such rights, title and interest that she presently has in and to the corpus, income or accruals of that certain estate originally devised and distributed to second party under the Last Will and Testament of James V. Monroe and/or under the decrees of distribution of the estates of James V. Monroe in the State of Washington and the State of Nebraska.

It is the intention of this agreement as expressed above that from and after the date of the said renouncement and of this agreement the first party will be the sole owner of the undivided one-half interest in the Trust Agency Account D168 originally distributed to first party as trustee for Joan Vincent Monroe, including unexpended income, accruals and accumulations thereto, as to which Trust Agency Account the Puget Sound National Bank of Tacoma, Washington, is Trustee; and the second party, Mary Monroe Davis, shall be the sole owner of the undivided one-half interest in said Trust Agency Account D168 originally distributed to second party, including any and all income not used and expended by first party under her general power of appointment and including the original corpus of said one-half interest together with all accruals and accumulations thereto.

It is further understood and agreed that this agreement does not constitute a sale from first party to second party for consideration, but is an agreement executed for the purpose of setting forth and settling the legal rights of the parties in and to Trust Agency Account D168 with the Puget Sound National Bank of Tacoma, Washington, and supplements the renunciation previously executed by the first party in the event that it is hereafter determined that any right, title or interest remained in the first party subsequent to said renunciation."

To lend a stamp of judicial approval to the transaction a court suit was initiated. Mary Snyder Monroe was plaintiff and Mary Monroe Davis, the Puget Sound National Bank of Tacoma, and the United States were the defendants. The United States did not enter the proceeding. The plaintiff here has conceded that the action was non-adversary and that the United States was not bound by

the results. On December 3, 1965 Findings of Fact and Conclusions of Law and Decree were entered by the Honorable Lloyd Wiehl, Judge of the Superior Court of the State of Washington for Yakima County. The decree provided that no gift resulted from the division of Trust Agency Account D-168 or by the execution of the two instruments on February 2 and 3, 1963. The Findings of Fact further stated that the plaintiff did not have an outright ownership interest in the income accruing to her daughter, but rather a power of appointment to invade either corpus or income if she so desired.

Income taxes were paid by the plaintiff on income accruing to the account for the years 1959, 1960 and 1961. A claim for refund of those taxes was filed on or about March 4, 1963. Formal notice of disallowance was sent February 19, 1965. On September 28, 1966 the taxpayer filed her complaint in Case No. 2196 to contest that decision. The gift tax controversy was to follow.

Under date of December 15, 1967 a 90 day letter was sent to the plaintiff stating that a gift tax deficiency had occurred as a result of the Renunciation And Release of February 1963. The amount demanded with accrued interest was paid under protest in installments totaling $117,690.29. Predictably, a suit for refund was initiated with the filing of Case No. 2437. Because both causes involve common questions of law and fact within the meaning of Rule 42(a), F.R. Civ.P., they were, by stipulation of counsel and order of the Court, consolidated for trial.

This Court has jurisdiction over both causes by virtue of Title 28, U.S.C. Section 1346(a) (1), which provides that:

"(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

(1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws; * * *."

## ISSUES

The questions presented are:

(1) Whether the Renunciation And Release on February 2, 1963 and the agreement of February 3, 1963 constituted a gift to Mary Monroe Davis taxable to Mary Snyder Monroe, and

(2) Whether all of the income earned by the account in each of the years 1959, 1960 and 1961 should be included for federal tax purposes in the gross income of the plaintiff.

The answers to both of these questions depend on the nature of the property interest created in the plaintiff by paragraph V of the will.

Plaintiff argues that the accrued income not taken by her and the right to the income from the remainder of the corpus belonging to Mary Monroe Davis should be construed as a power of appointment. She argues that she has an expressly limited estate in which all income not taken by her vested in her daughter under the terms of the will. If these contentions are correct no gift resulted from the transaction of February 2 and 3, 1963 because the power of appointment was one created prior to October 21, 1942, the release of which is excepted from gift taxation by 26 U.S.C. § 2514. Neither would the income taxes on the life estate for the years 1959, 1960 and 1961 have been owing. Under plaintiff's contentions the right to income would have belonged to the daughter, Mary Monroe Davis.

The defendant urges that the taxpayer had a life estate in the portion of the estate she did not own outright. Defendant argues that since she had a life

estate, all income and the right to income belonged to the taxpayer. The defendant also argues that the Court must hold that the 1965 decree was of no binding effect.

## OPINION

■ Washington law creates and defines the legal interests and rights created by the will. The Federal Revenue Acts designate what rights and interests shall be taxed. Helvering v. Stuart, 317 U.S. 154, 161, 63 S.Ct. 140, 87 L.Ed. 154 (1942); Morgan v. Commissioner of Internal Revenue, 309 U.S. 78, 80, 626, 60 S.Ct. 424, 84 L.Ed. 585, 1035 (1940); United States v. First National Trust & Savings Bank of San Diego, 335 F.2d 107, 112 (9th Cir. 1964); Goldstein v. C. I. R., 298 F.2d 562, 566 (9th Cir. 1962).

■ Paragraph V of the will set out above uses the express term "life estate" in describing the property interest left to the wife by the testator. The Washington Supreme Court has held that where an estate is created in one part of a will in clear and decisive terms, it will not be reduced or cut down by doubtful language in a subsequent provision. In re Thomas' Estate, 17 Wash. 2d 674, 678, 136 P.2d 1017, 147 A.L.R. 598 (1943). The authorities on this point are summarized in the case of In re Douglas' Estate, 65 Wash.2d 495, 499, 398 P.2d 7, 10 (1965):

"In construing the provisions of the will we are bound by the oft-repeated rules that the testator's intent is paramount and must be gathered from the four corners of the will when read as a whole. Further, where, as here, an estate is given in one part of a will in clear and decisive terms (paragraph III) it will not be taken away or cut down by doubtful language of a subsequent clause, but only by positive provision in words as clear and decisive as those which created the estate. In re McCready's Will, *supra* [236 App.Div. 390, 259 N.Y.S. 512].

See Medlin v. Medlin, *supra* [Tex. Civ.App., 203 S.W.2d 635,] at p. 639; In re Thomas' Estate, 17 Wash.2d 674, 136 P.2d 1017 [147 A.L.R. 598 (1943)]. As we said in In re Searl's Estate, 29 Wash.2d 230, 186 P.2d 913, 173 A.L.R. 1247 (1947), the intention which controls is that which is positive and direct, not that which is merely negative or inferential."

■ No particular form of words is necessary for the creation of a power of appointment. In re Lidston's Estate, 32 Wash.2d 408, 420, 202 P.2d 259 (1949). However, in the will involved here the words following the initial bequest make clear the intent of the testator. His intent was that the surviving wife during her lifetime have full right to do with the remainder as she saw fit. The term "power of appointment" is not mentioned. Neither are its requisites described. More importantly, there is no language in the document attempting to delimit the bequest by any ascertainable standard such as necessary support and maintenance. The Superior Court of Yakima County in the Order Approving Final Account of October 26, 1940, set out above, recognized this fact when it specifically reserved a life estate from the testator's entire estate, to the plaintiff.

It is found that Mary Snyder Monroe had a life estate in Mary Monroe Davis' remainder of the estate at the time of the signing of the Renunciation And Release on February 2, 1963 and the Agreement of February 3, 1963.

■ Under these circumstances, Washington law is settled on the issue of ownership of the accruing income. In the case of In re Douglas' Estate, *supra*, at 498, 499, 398 P.2d at 10, the court stated:

"The rule is well established that the holder of a life estate created by will is entitled to all income derived from the estate during his tenancy, and any such income which remains unexpended at his death constitutes a part of

his estate and does not pass to the remaindermen under the will. (citations omitted.) But this rule does not apply where the enjoyment of a life estate is specifically *limited* to the necessary support and maintenance."

■ There is no language in the will making the exception applicable. Because there are no statutory exclusions in the Internal Revenue Code which apply, it is concluded that the plaintiff-taxpayer at the time she relinquished her rights over accrued and accumulating income, made a gift to Mary Monroe Davis.

Section 61(a) of the Internal Revenue Code of 1954, 26 U.S.C. § 61(a) defines the items subject to inclusion in gross income for purposes of Federal income taxation. Except as already noted, plaintiff has made no argument that any statutory exclusion in the Internal Revenue Code applies to the funds in question.

In Corliss v. Bowers, 281 U.S. 376, 378, 50 S.Ct. 336, 337, 74 L.Ed. 916 (1930) the Supreme Court ruled that:

"* * * The income that is subject to a man's unfettered command and that he is free to enjoy at his own option may be taxed to him as his income, whether he sees fit to enjoy it or not."

■ The plaintiff was the holder of a life estate in her daughter's remainder interest. Under applicable state law this gave her ownership of the right to income. The tax was properly assessed in the years in which the income accrued.

The remaining fact issue in this case, which has been stipulated, involves the refund of tax due plaintiff from revaluation of certain property. Defendant is requested to submit findings on that issue only and to submit judgment on the entire case. This opinion will constitute the Findings of Fact and Conclusions of Law on the issues treated in it.