[No. 36508.   Department Two.   February 13, 1964.]

G. A. KJOSNESS, *Respondent,* v. HANNAH K. LENDE *et al.,*
*Respondents,* EVELYN COX *et al., Appellants.**

*Reported in 389 P. (2d) 280.

*Edward John Crowley, Jr.* and *Lewis H. Orland,* for appellants.

*Paine, Lowe, Coffin, Herman & O'Kelly,* by *Edwin R. Roberts,* for respondent Kjosness.

*W. V. Kelley, Wm. A. Davenport,* and *Witherspoon, Kelley, Davenport & Toole,* for respondent Dickson.

HAMILTON, J.—This is an appeal from a judgment closing and distributing the corpus of a testamentary trust.

On May 20, 1926, Gunder P. Kjosness executed his last will and testament. On March 30, 1927, he died in Asotin County, Washington. He left surviving his wife Nikoline Fredrikke and nine children, Hannah, Martha, Ingram, Gustav, Albert, Amalie, Valborg, Gunder, and Nikoline. The approximate ages of the survivors at the time he executed his will, were 62, 47, 45, 42, 38, 36, 34, 32, 30, and 23, respectively. At the time of his death, all of the children were married, except the youngest daughter Nikoline. All married children had children, except Hannah. His will was regularly admitted to probate in the Superior Court for Asotin County, and, the designated corporate executor having declined to act, Gustav A. Kjosness, the second son, was appointed as administrator with the will annexed.

On October 7, 1931, the administrator's final account and petition for distribution was approved by the court and a decree of distribution entered. By the terms of the decree and with the consent of the surviving wife, the household goods and effects were distributed to the surviving wife for her use during her lifetime. The residue of the estate, consisting of 2 shares of preferred and 752 shares of common stock of the Madison Lumber & Mill Company, a closed family corporation, was distributed into trust for the benefit and support of the surviving wife during her lifetime, thereafter to be divided, following payment of certain specific bequests, among the 9 children. Eight of the gifts over to the children were conditioned upon their respectively attaining the age of 45, and all were subject to a portion being retained in trust for the support of the youngest

daughter so long as she remained unmarried and incapable of self-support. Again, the designated corporate trustee having declined to act, Gustav A. Kjosness, with the consent of a majority of the heirs, was appointed as trustee.

In 1946, at the approximate age of 65, Martha, the second oldest daughter, died leaving surviving her a husband, Albert S. Ryland, and two daughters, Deka Gray and Betty Anne Carlson. Martha's heirs have not joined in this appeal.

On December 27, 1953, Ingram, the first son, died at the approximate age of 69. Surviving Ingram are his wife, Eva Maud, now an incompetent, two daughters, Evelyn Cox and Kathryn Gwendolyn Hudson, and a grandchild, Ingrid Dickson, the daughter of a deceased son. By his will, Ingram devised his estate to his wife Eva Maud.

Nikoline Fredrikke, the widow and life beneficiary of the trust, died on December 22, 1957, at the age of 93 years.

At the time of the widow's death, there existed in the trust estate 855½ shares of common stock of the Madison Lumber & Mill Company, the corporation having purchased the 2 shares of preferred stock in 1947 and issued to the trust estate a stock dividend of 110½ shares in 1950. Seven shares of the trust estate stock, 5 in 1948 and 2 in 1950, had been transferred to Mrs. Florence Gunderson, a long-time secretary of the corporation, purportedly in lieu of cash for personal services rendered by her on behalf of the surviving wife.

Between 1931 and 1957, no corporate cash dividends were paid into the trust estate. Monthly cash advances were made to meet the needs of the surviving wife directly from the corporation and credited against declared dividends. A substantial deficit accrued. Since 1957, due to business reasons, no dividends have been declared or paid by the corporation.

In February, 1961, Gustav A. Kjosness, as trustee, instituted this action in the Superior Court of Spokane County, seeking approval of his stewardship of the trust, determination of heirship, and an order distributing the assets of

the trust. All living children of Gunder P. Kjosness and the survivors of the deceased children were joined as parties, except one, a son of Martha, who had disappeared prior to 1946. Appearing, answering, and being represented at the subsequent hearing were the daughters of Ingram, Evelyn Cox and Kathryn Gwendolyn Hudson, in their individual capacities; Kathryn Gwendolyn Hudson in her capacity as executrix of her father's estate and as guardian of her mother's estate; and the granddaughter, Ingrid Dickson.

The daughters requested an accounting by the trustee. In addition, they asserted that, under the terms of the will of Gunder P. Kjosness, Ingram's share in the corpus of the trust vested in him, either upon the death of the testator or when he attained the age of 45, subject to the life estate of the widow; hence, upon the death of the widow, it became distributable to his estate. On the other hand, the granddaughter and the trustee, Gustav A. Kjosness, contended Ingram's remainder interest was contingent upon his surviving the life beneficiary, and, according to the provisions of the will, became distributable to his children or their issue per stirpes.

At the conclusion of the hearing, at which only the trustee and Mrs. Florence Gunderson were called and testified, the trial court entered findings of fact, conclusions of law, and a decree approving the trustee's stewardship and accounting of the trust estate, construing the provisions of the will in accordance with the contentions of the granddaughter and the trustee, and ordering division of the residue of the trust estate into 9 equal parts with distribution, one part each, to the 7 surviving children of the testator, and to the children of Martha and the children and granddaughter of Ingram per stirpes.

The daughters, in their individual and representative capacities, appeal.

Appellants first challenge the trial court's construction of the provisions of the will of Gunder P. Kjosness and the order of distribution, insofar as such results in distribu-

tion of Ingram's 1/9 share of the corpus of the trust to his children and grandchild rather than to his estate.

The fundamental question raised by appellants' first challenge is whether, under the provisions of the will, Ingram's share in the corpus of the trust estate remaining at the time of the widow's death was an indefeasibly vested interest, or one subject to a condition precedent of his survival of the widow or subject to complete defeasance by his nonsurvival of the widow. More precisely stated, does the will, by its provisions, expressly or by implication, erect as a condition precedent to the vesting of Ingram's interest his survival of the life beneficiary, or if not, does the will create in Ingram a vested interest subject to complete defeasance by his nonsurvival of the life beneficiary?

■ As we stated in *Shufeldt v. Shufeldt,* 130 Wash. 253, 258, 227 Pac. 6, and have repeated since:

"It goes without saying that in this, as in every other case of construing a will, the supreme purpose is to ascertain the actual intent of the testator; and that should be ascertained, whenever possible, from the language of the will itself, unaided by extrinsic facts. Certain technical rules exist for the gathering of the intent of the testator from the will itself. . . .

". . .

"The intention is to be gathered from the words used as covered by recognized rules, and in cases of doubt and ambiguity, from the situation and surrounding circumstances. [citing cases] . . ."

■ Further, following the pattern of the *Shufeldt* case, *supra,* and before looking to the pertinent provisions of the will here in question, we set out three rules of construction which we deem particularly apropos to the instant case. We again recognize, as we did in the *Shufeldt* case, that the following rules do not represent a complete list of all rules of construction, and that they are subordinate to and will not override the actual intent of the testator.

(1) The law prefers early vesting and favors that construction which holds a remainder vests rather than that which considers it contingent, even in cases where the ques-

tion is doubtful. *Shufeldt v. Shufeldt, supra; In re Quick's Estate,* 33 Wn. (2d) 568, 206 P. (2d) 489. Similarly, the law prefers early indefeasibility. 3 Restatement, Property, § 243 Comment j, p. 1218.

(2) "In a limitation purporting to create a remainder or an executory interest in a person, the inclusion of a supplanting limitation with respect to some, but not all, failures of such person to survive to a future time, tends to establish

"(a) that the restricted requirement of survival which is expressed is a basis for the defeasance of such interest rather than a condition precedent thereof; and

"(b) that such interest is subject to no requirement of survival except the restricted one which is expressed." 3 Restatement, Property § 254, p. 1284.

(3) "In the limitation purporting to create a remainder, or an executory interest, the presence of a condition precedent, or of a defeasibility, dependent on other facts is not a material factor in determining the existence of the requirement of survival to the time of the fulfillment or elimination of such other condition precedent or defeasibility." 3 Restatement, Property § 261, p. 1314.

With the foregoing in mind, we look to the pertinent paragraphs of the will, which are:

"FOURTH: . . . I give, devise and bequeath all the rest, residue and remainder of the property and estate . . . IN TRUST AS HEREINAFTER PROVIDED, and I direct that my said trustee take and hold such fund of said estate in trust . . . and after paying the necessary expenses of the trust, to pay over to my said wife, Nikoline Fredrikke Kjosness, during her life, for her own use, and annual net income thereof in regular quarterly installments. Each payment to my wife may be made upon her sole and separate receipt which shall be sufficient discharge to my said trustee. It is my wish that my youngest daughter Nikoline shall receive the benefits of a collegiate education and I, therefore request *said* and direct that of the said income so received by her, my wife shall use so much thereof as may be necessary for the support, maintenance and education of my said daughter. Should the net income of my said estate be insufficient for the comfortable maintenance and support of my wife and for the education and support of my said daughter then and in that event I direct that my trustee

shall use so much of the principal of said trust estate as may be necessary for said purposes.

"FIFTH: Upon the death of my said wife, Nikoline Fredrikke Kjosness, I hereby give and bequeath unto the following named institutions, the respective sums hereinafter designated, absolutely and free of trust, and I direct my trustee to pay such bequests thereto as soon after the death of my said wife as conveniently may be, . . .

"SIXTH, The residue of my said trust estate remaining after the payment of the foregoing specific bequests contained in the fifth clause of this my Will, and subject to paragraph (j) of this clause, I direct that my said trustee continue to hold the same in trust in the manner hereinbefore described, and that said residue shall be divided into nine equal parts, and to pay over and distribute the same in the manner following, that is to say:

"(a) To pay over to my daughter, Hannah K. Lende, . . . after deducting her proportionate part of the necessary expenses of the trust, the principal or corpus of one-ninth of said residue, fully discharged of trust, to her absolutely and forever. My said daughter, Hannah K. Lende, is now past forty-five years of age and therefore does not come into the restrictions imposed upon the payment to my other children as hereinafter set forth. In the event that my said daughter shall predecease me or if she shall have died before the death of my said wife, then I direct that the said one-ninth part of said residue which, had she lived would have gone to her as hereinbefore directed, be the same principal or income accrued but unpaid, forthwith shall go in and be vested absolutely and free of trust in such person or persons as shall be, at the time of her death, entitled to her estate under the statutes of descent and distribution of the State of Minnesota.

" . . .[1]

"(c) To pay over to my son, Ingram G. Kjosness, after deducting his proportionate part of the necessary expenses of the trust, the income arising from one-ninth of the said residue, in regular quarterly installments, until such time as my said son shall have reached the age of forty-five years; and when my said son shall have reached the age of forty-five years, then to pay over to my said son the principal or

---

[1]Subparagraphs b, d, e, f, g, and h, make provision for the children, Martha, Gustav, Albert, Amalie, Valborg, and Gunder, identical in kind to the provisions for Ingram.

corpus of said one-ninth of said residue, fully discharged of trust, to him absolutely and forever. If my said son shall predecease me or if he shall die before having reached the age of forty-five years, then I direct that the said one-ninth part of said residue which, had he lived to attain that age, would have gone to him as hereinbefore directed, be the same principal or income accrued but unpaid, shall be paid over, forthwith, to the surviving children or child of my said son, or to the living issue of any deceased children or child of my said son, by right of representation per stirpes and not per capita, to them absolutely and forever.

"  .  .  .

"(i) To pay over to my daughter, Nikoline Fredrikke Kjosness, after deducting her proportionate part of the necessary expenses of the trust, the income arising from one-ninth of the said residue, in regular quarterly installments, until such time as my said daughter shall have reached the age of forty-five years; and when my said daughter shall have reached the age of forty-five years then to pay over to my said daughter the principal or corpus of said one-ninth of said residue, fully discharged of trust, to her absolutely and forever. If my said daughter shall predecease me with or without issue or if she shall die before having reached the age of forty-five years, then I direct that the said one-ninth part of said residue which, had she lived to attain that age, would have gone to her as hereinbefore directed, be the same principal or income accrued but unpaid, forthwith shall go to and be vested absolutely and free of trust in such person or persons, if children then by right of representation per stirpes and not per capita, as shall be, at the time of her death entitled to her estate under the statutes of descent and distribution of the state in which this trust is executed.

"In the event that any or either of the several beneficiaries of the trusts indicated under this the sixth clause of my Will, shall die, leaving no person entitled, under the provisions of this Will, to his or her ninth share of said residue, then, I direct that the said share of the said person so dying, shall be equally divided and distributed to the survivors or survivor of him or her so dying, share and share alike, the same to augment their several interests, and to be governed by the conditions and provisions herein made applicable thereto.

"(j) Should my youngest daughter Nikoline be unmarried, and in the opinion of the trustee (and the trustee shall

be sole judge of this) incapable of self support, then shall the trustee set aside such part of my estate as they deem sufficient, the income from which will support said daughter Nikoline. This part of my estate shall not be distributed as long as said daughter Nikoline remains unmarried and incapable of self support. However when either or both of these conditions be changed, then shall such part of my estate be divided into nine equal parts, in accordance with the manner in which the residue was divided as described in the previous paragraphs (a) to (i) inclusive of this clause."

It is at once apparent that the will demonstrates a careful, precise, and deliberate effort upon the part of the testator, couched in the language of a skilled draftsman, to transfer the residue of his estate to his nine children in equal shares absolutely and forever, subject to the intermediate objective of providing care and support for his widow for life and bestowing incidental benefits upon his youngest daughter. It is equally apparent that the testator considered and sought to make provisions for the contingencies of death of a child (a) before the testator, (b) before age 45, and (c) without surviving issue. Only in the case of Hannah, who was past 45, did the testator take note of and make provision for the contingency of any of his children predeceasing the widow. Only by interpolation can the same contingency be read into the provisions for the remaining children, and this must be done in face of the fact that at the time the testator drafted his will his remaining children, excepting Nikoline, ranged in age from 30 to 45, were married, and some, if not all, had children. A conclusion that the omission of this contingency from the provisions relating to the other children was inadvertent, as opposed to deliberate, is difficult to draw in light of the careful and skilled draftsmanship of the will. A more logical conclusion to be drawn from this omission is that the testator was, insofar as his married children be concerned, attempting to say: I wish the residue of my estate to stay within the family. Up to the time you reach 45, I will attempt to keep it there. After age 45, however, I trust

you to keep it within the family and I rely upon your judgment in selecting the particular recipients. But, if you die before final distribution without children or grandchildren surviving, then I wish your share to be distributed to the survivors of my children.

Stripping the gift to Ingram to its bare essentials and stating it in classical form, the will transfers Ingram's share of the residue of the testator's estate to a trustee in trust for the benefit of the widow for life, then for the benefit of Ingram until age 45, remainder to Ingram, absolutely and forever; but, if Ingram predeceases the testator or dies before reaching the age of 45, then over to Ingram's children or their children; but, if Ingram dies without children or grandchildren, then over to the surviving children of the testator share and share alike; all subject to depletion by the needs of the widow and daughter Nikoline.

Thus, it appears that the supplanting limitation of Ingram's share over to his children or their children, is not predicated upon all failures of survival, but only two: (a) The death of Ingram before the testator, or (b) the death of Ingram before age 45. And, the supplanting limitation over to the testator's surviving children is conditioned only upon one failure of survival, the death of Ingram without surviving children or grandchildren. The only other provisions of the will bearing upon the defeasibility of Ingram's interest, relate to the depletion of the residue by the needs of the widow or the daughter Nikoline. These provisions, however, do not relate to the question of Ingram's survival. They relate only to the ultimate amount or value of his interest.

We are convinced that under the terms of the will as drafted, and consistent with the rules of construction to which we have adverted, it was the intent of the testator that Ingram's remainder interest, in any residue of the testator's estate existing at the termination of the life interest, should vest absolutely and forever upon his surviving the testator and attaining the age of 45, subject only to defeasance if he died, prior to distribution, without

surviving children or grandchildren. Prior to and at the time of Ingram's death all conditions of his survival, as contained in the will, had been fulfilled. He held an indefeasibly vested remainder interest in any residue of the estate remaining after the termination of the life interest.

This interest should have been distributed to his estate, rather than to the supplanting legatees. The trial court erred in construing the will otherwise.

We turn next to appellants' second challenge, which is directed to the trial court's approval of the stewardship and accounting of the trustee, without requiring a formal accounting pursuant to the provisions of RCW 30.30.040.[2]

█ The main thrust of appellants' argument is predicated upon the fact that since 1931 the trustee, Gustav A. Kjosness, served upon the board of directors of the Madison Lumber & Mill Company, and since 1938 served as president. By virtue of this situation, appellants assert the affairs of the trust and of the corporation are so interwoven as to necessitate a full, formal, and detailed accounting of the financial progress of the Madison Lumber & Mill Company.

We, as did the trial court, disagree.

The record reveals that the Madison Lumber & Mill Company was during all times here concerned essentially a closed family corporation. Its board of directors was composed of heirs of the testator. All heirs were, at least in the later years, invited to attend board meetings. All dividends declared and cash advances made to the life beneficiary were with approval of the board of directors. The trustee presented a complete list of all advances made to the life beneficiary and of the corporate dividends declared. All income from the corpus of the trust was paid

[2]"Upon the petition of any settlor or of any beneficiary of such a trust after due notice thereof to the trustee the superior court in the county where the trustee or one of the trustees resides may direct the trustee or trustees thereof to file in said court such an account at any time subsequent to one year from the day on which such a report was last filed, or if none, then after one year from the inception of the trust." RCW 30.30.040.

to the life beneficiary during her lifetime, and the corpus of the trust remained substantially intact. The trustee served in such capacity since 1931 without compensation and seeks none now. He also served in his capacity as president of the corporation since 1938 at a modest salary, and without objection by the heirs. Prior to trial, appellants were afforded opportunity to examine all books and records of the trust and of the corporation, and were offered a continuance at the time of trial if they desired further time. The trustee testified fully as to all matters inquired into by appellants and permitted by the trial court.

The trial court did not abuse its discretion in refusing to order a formal and detailed accounting of the affairs of the corporation since 1931, and the evidence presented amply supports the trial court's finding of faithful performance of the trust by the trustee. We will not disturb the trial court's finding.

Lastly, appellants challenge the transfer of the seven shares of stock from the corpus of the trust to Mrs. Florence Gunderson in the years 1948 and 1950. They assert that the evidence discloses such stock transfers to be nothing more than a gift. The trustee, however, testified that the shares of stock in question were transferred to Mrs. Gunderson in lieu of cash payment for services performed by her for the life beneficiary, and the trial court found such shares "were properly issued to Florence Gunderson as compensation for services rendered to Nikoline Fredrikke Kjosness during her lifetime."

The will authorized invasion of the corpus of the trust for the care, support, and maintenance of the life beneficiary. We will not disturb the trial court's finding and approval of the transfer.

The judgment of the trial court is modified to provide for distribution of Ingram's 1/9th share in the corpus of the trust to his estate. Otherwise the judgment is affirmed. All parties shall bear their respective costs.

DONWORTH, FINLEY, WEAVER, and HUNTER, JJ., concur.