[No. 39891.    Department One.    April 24, 1969.]

*In the Matter of the Estate of* F. BERT MAGEE, *Deceased.*
THE STATE OF WASHINGTON, *Appellant,* v. C. F. PATRICK
*et al., Respondents.**

*Reported in 454 P.2d 402.

*The Attorney General, Henry W. Wager* and *Timothy R. Malone, Assistants,* for appellant.

*Paine, Lowe, Coffin, Herman & O'Kelly,* by *R. E. Lowe* and *John R. Quinlan,* for respondents.

OTT, J.†—F. Bert Magee died testate October 16, 1963. His estate was probated in Spokane County. The inheritance tax division of the state tax commission on December 24, 1964, computed the tax to be in the sum of $318,221.89. January 12, 1965, the executors paid the tax. September 27, 1966, the tax commission notified the executors by letter that an additional inheritance tax in the sum of $52,708.17 was due. February 10, 1967, the tax commission caused to be filed in the estate proceedings its "Findings of Supervisor of Inheritance Tax Division Fixing Tax Due" alleging a balance as above indicated. March 7, 1967, the executors for the estate filed their "Objections to Inheritance Tax Findings" contending, *inter alia,* that "The method of computing the tax which results in a balance at issue of $52,708.17 is contrary to law." The cause was tried to the court on stipulated facts. On May 16, 1967, the court entered its findings of fact and conclusions of law. From a judgment denying the additional assessment and directing a refund of $5,916.39, the state has appealed.

The will of F. Bert Magee provided, *inter alia,* that certain personal effects be given to his wife, E. Marie Magee, and that "[a]ll the rest, residue and remainder of my estate I give, devise and bequeath to Trustees" to create a trust.

---

†Judge Ott is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

The trustees were directed to pay each year the net income of the trust as follows: 15 per cent to E. Marie Magee, a class A beneficiary under RCW 83.08.020; 75 per cent to several-named relatives, class C beneficiaries under RCW 83.08.040; and 10 per cent to two nontaxable charitable institutions. Upon termination of the trust, the remainder was directed to be paid to the Shriner's Hospital for Crippled Children in Spokane. RCW 83.16.020 provides the method by which the tax commission is governed in determining the present value of life estates and vested remainders for inheritance tax purposes. The value of Mrs. Magee's life interest in the trust was thus determined to be 3.93 per cent of the total residue; the value of the class C beneficiaries' interest to be 55.95 per cent; and the value of the remainder, left to charity, to be 40.12 per cent.

In this appeal there is no dispute over (1) the net value of the estate subject to tax, (2) the percentage of income to be paid to the class A and class C beneficiaries, or (3) the present percentage value of the life estates and vested remainder. The appeal involves only the proper method for computing the inheritance tax due in light of paragraph 6 of the will which provides:

> If, by any law of the State or of the United States, any estate tax or inheritance tax becomes chargeable to any one or more of the above named distributees, or his or her legacy, then such tax shall be paid out of the *residue of the estate,* and not charged to the legatee.

(Italics ours.)

■ This appeal involves a determination of whether the testator intended that the inheritance tax should be paid out of funds constituting the residue of his estate, which created the trust, or whether he intended the tax to be paid from funds constituting the remainder left to charity upon termination of the trust. When this determination is made, the question of the proper tax becomes a simple matter of computation. RCW 11.12.230 provides:

> All courts and others concerned in the execution of last wills shall have due regard to the direction of the will,

and the true intent and meaning of the testator, in all matters brought before them.

We have said that the testator's intent, scheme or plan must be ascertained from the four corners of the will. Also, the specific provisions of the will must be construed in light of the entire document. *In re Shaw's Estate,* 69 Wn.2d 238, 417 P.2d 942 (1966); *In re Tipp's Estate,* 54 Wn.2d 585, 343 P.2d 566 (1959).

▮▮ In his will F. Bert Magee directed that the taxable beneficiaries must receive their trust income free from tax and that the tax should be paid out of the *residue of the estate.* The residue of an estate is defined as that part remaining after the payment of specific legacies, taxes, debts, and costs of administration. *Wachovia Bank & Trust Co. v. Grubb,* 233 N.C. 22, 62 S.E.2d 719 (1950). The residue in the instant case consists of the assets used to establish the trust, the income of which was devised to named beneficiaries for life. Upon termination of the trust, the remaining corpus was devised to charity. The term "residue", as used in the will, is *not* limited to the remainder left to charity upon termination of the trust.

▮ This state is committed to the rule that where a will provides that a *specific* bequest must be tax free to the beneficiary and the tax imposed must be paid from the residue or other sources, the legacy is in fact increased by such a sum that when the tax is deducted the beneficiary will receive the amount of the specific legacy. *In re Henry's Estate,* 189 Wash. 510, 66 P.2d 350 (1937), and cases cited. In such case, the tax is computed on the basis of a combination of the specific legacy and an amount sufficient to pay the tax on that legacy. The necessary implication of the *Henry* case and the conclusion of the trial court in the instant case, is that a beneficiary bequeathed a specific percentage of an indeterminate annual income should recognize as an additional bequest only the amount of money paid as taxes that he does not bear himself. In the *Henry* case, the specific amount received by the beneficiaries was not affected by payment of tax from the residue. The *per-*

*centage* legacies in the instant case, however, are directly affected by any diminution of the residue used to create the trust from which they receive their income. This analysis is predicated upon the intent of the testator as expressed by the language of the will.

■ F. Bert Magee directed that the life income beneficiaries were to each receive a certain percentage of the yearly income from the trust. It would have been impossible for him to have predicted the exact amount each beneficiary would actually receive. Not only were there expenses and taxes to be deducted from the estate, but there could be no certainty regarding the earnings produced by the investments composing the residue of the estate, which was used to create the trust. The testator directed merely that the beneficiaries were not to pay taxes on the amount they actually received. This request did not preclude but rather required the indirect reduction of income to life beneficiaries due to payment of taxes from the fund creating the corpus of the trust.

If taxes are paid from the residue as directed by the testator, it follows that the corpus of the trust, and correspondingly the income therefrom, will be diminished. The life beneficiaries, as recipients of a percentage of the income from the residue rather than a fixed amount, as in the *Henry* case, therefore bear the burden of part of the tax through reduced income. For example, because the value of the class C beneficiaries' estate is 55.95 per cent of the total residue, when the residue is reduced to pay taxes, the class C beneficiaries bear 55.95 per cent of that reduction. Applying the implication of the *Henry* case to the instant facts, the amount of the inheritance tax each beneficiary should have added to his legacy should reflect only the tax borne by someone else, and not an amount by which his income is reduced. Therefore, the class A and C beneficiaries, whose collective income reduction accounts for 59.88 per cent of the tax burden, should have added to their bequests only 40.12 per cent of the tax burden, which is the reduction in corpus representing the interest of the charitable remain-

der. Pursuant to this rule, the trial court increased by $125,296.97 the legacies of the class A and C beneficiaries.

Appellant argues that the language of the will that taxes not be "chargeable to the legatees" requires that the life beneficiaries' interests be fixed once the total value of the estate is established and that the taxes be completely borne by the charitable remainder's interest in the trust corpus. To satisfy this requirement, the taxes must be paid from the corpus, and the amount of income lost by the life beneficiaries due to a reduced corpus must also be made up to them from the corpus. This analysis would require an invasion of the trust corpus not only to pay taxes but to pay money to life beneficiaries. The testator directed, however, that the life beneficiaries be paid only the *net income* from the trust, not the corpus. The testator's intent in this regard is specifically expressed in six separate instances in the will. The only payment from the corpus which the testator authorized, other than taxes and trustees' and executors' fees, was expressed in paragraph 5 of the will, where he directed the corpus to be paid to the Shriner's Hospital for Crippled Children upon termination of the trust.

Appellant further contends that the executors' calculations benefit the remainderman to the detriment of the life income beneficiaries, the natural objects of the testator's concern. The charitable remainder will be greater if it is not required to bear the entire burden of the tax, and the life income estates will be decreased due to a reduced corpus. But, in this case, the trust *corpus* may not be invaded to pay money to the life beneficiaries. It is obvious that the more money left in the trust, the more income the life beneficiaries will receive. Thus, even though the disputed $52,708.17, if left in the corpus, will ultimately benefit the remainder interest, it will also produce income for the life beneficiaries that they would not otherwise receive.

There is no disagreement that the value of the *net taxable* estate, that portion bequeathed to the class A and C beneficiaries, is $1,194,903.78. The trial court, in determining the intent of the testator and applying the rule of the

*Henry* case, to percentage bequests of income derived from the fund from which taxes are deducted, increased the life beneficiaries' bequests by $125,296.97, which was 40.12 per cent of the amount necessary to pay the taxes. The amount of the increase represented taxes paid on behalf of the life beneficiaries out of that portion of the trust corpus representing the remainder interest. This computation resulted in a *total taxable* estate of $1,320,-200.75, on which the tax is undisputedly $312,305.50. The state's computation is based upon its theory that the *entire* burden of the tax should be borne by the charitable remainder interest in the corpus and that the income lost by the life beneficiaries should be restored to them from the corpus of the trust. Under appellant's theory, 100 per cent of the amount necessary to pay the tax, or $370,930.06, would be added to the net taxable estate. This computation would result in a total taxable estate of $1,565,833.06, on which the tax is undisputedly $370,930.06.

We hold that the express intention of the testator was that the tax should be paid out of the "residue of the estate", the same fund which created the trust, rather than exclusively out of the remainder left to charity upon termination of the trust. The formula urged by appellant is violative of this intention. Appellant's theory is also adverse to the holding in the *Henry* case, as it applies to bequests of a specific percentage of income produced by the same fund from which taxes must be paid.

Predicated upon the estate's computation, the trial court found the tax due to be in the sum of $312,305.50, which is $5,916.39 less than the tax computed and paid in 1964. In paragraph 17 of his will the testator provided that trustees' fees were to be charged one-half to the corpus of the trust and one-half to the income. This item was not included in the December 24, 1964 computation and this exclusion resulted in an overpayment in the sum of $5,916.39.

The judgment is affirmed.

Finley, Weaver, and Neill, JJ., concur.

Rosellini, J., concurs in the result.