[No. 42193. En Banc. June 15, 1972.]

*In the Matter of the Estate of* ENID WEBER RIEMCKE, *Deceased.*
LUCILLE WEBER SCHREINER, *Individually and as Executrix, Appellant,* v. CHARLES A. RIEMCKE, *Respondent.*

C. W. *Halverson* and *William F. Almon* (of *Halverson, Applegate, McDonald, Bond, Grahn & Wiehl*), for appellant.

*William H. Mays* and *Michael W. Leavitt* (of *Gavin, Robinson, Kendrick, Redman & Mays*), for respondent.

STAFFORD, J.—This appeal presents questions arising

from the primary legatees' and devisees' renunciation of their right to take under a will.

Enid Weber Riemcke died testate February 18, 1967. She was survived by her husband (the respondent), her parents, and her sister (the appellant).

Decedent's will, executed in 1956, contained six paragraphs only the second and third of which are important here. They read in pertinent part as follows:

SECOND:

I hereby declare that I am the wife of Charles A. Riemcke. *I make no special provision for him herein,* although substantially all of the property owned by me and operated in large part by my husband, is my separate property derived through gifts and loans made to me by my parents, J. H. Weber and Ethelwyn K. Weber. *I have discussed the contents of this Will with my husband, and he is fully aware of the contents hereof and has expressed to me his consent to the terms hereof.*

THIRD:

I hereby give, devise and bequeath all the rest, residue and remainder of my estate to my parents, J. H. WEBER and ETHELWYN K. WEBER . . . share and share alike, or to the surviving parent, in the event one of my parents predeceases me. In the event that both of my parents predecease me, I hereby give, devise and bequeath all the rest, residue and remainder of my estate to my sister, LUCILLE WEBER SCHREINER . . .

I further provide that in the event neither of my parents nor my sister shall survive me, then I give, devise and bequeath all the rest, residue and remainder of my estate to my cousins . . . in equal shares . . . In the event any of my said cousins shall not be living at the effective date of this provision of my Last Will and Testament, the amount herein-given, devised and bequeathed to such cousin shall descend, in equal shares, to those of my cousins herein-named who shall survive me.

(Italics ours.)

Appellant was appointed executrix and gave notice of her appointment and the pendency of probate proceedings. The estate, comprised entirely of testatrix's separate prop-

erty, was appraised at $147,922.81. Testatrix's parents renounced their right to take under the will. Thereafter, appellant administered the estate on the assumption that she had become the sole legatee and devisee. Notice to creditors was published, all claims were satisfied and an order of solvency was entered. Subsequently, appellant, personally, loaned the estate $44,464.15 to pay the state inheritance and the federal estate taxes.

A petition for distribution was filed and the notice of hearing set August 13, 1970 as the date for final accounting. Prior to that date, respondent petitioned for a family allowance as well as an award in lieu of homestead and filed objections to the final accounting.

At the hearing it was disclosed that appellant, personally, had borrowed $850 from the estate in 1968 and $1,000 in 1970. It was also discovered that 24 shares of General Motors common stock had been omitted from the inventory.

Except for certain tax liabilities, the final accounting was approved, supplemented by the 24 shares of stock. The trial court ordered a supplemental accounting for the purpose of determining the amount to which appellant was entitled as personal reimbursement, taking into account the $1,850 she owed the estate. Respondent was denied a family allowance, but was awarded $6,000 in lieu of homestead. Appellant was awarded an executrix fee of $3,470 and an attorney's fee of $4,260. Respondent was awarded an attorney's fee of $500.

At trial both court and counsel treated the will as unambiguous. In decreeing distribution, the trial court gave one-half of the estate to decedent's parents and one-half to her husband (respondent). It reasoned that the parents' right to receive the entire estate had devolved from a residuary clause and that their renunciation thereof created a lapse which caused the entire estate to pass by intestacy. The trial court also ruled that the death of decedent's parents, not their renunciation of rights, was a condition precedent to any rights appellant might have under the will.

The sister-executrix appeals.

Appellant contends that the second and third paragraphs of the will evidence a clear intent that decedent's husband should take nothing and that, should her parents not take, appellant should take in their stead. Appellant invokes the familiar rule that a testator is presumed to have intended to dispose of his entire estate and not die intestate as to a portion thereof. *In re Estate of Lotzgesell,* 62 Wash. 352, 357, 113 P. 1105 (1911); 4 W. Bowe & D. Parker, Page on the Law of Wills § 30.14 (rev. ed. 1960) (hereinafter cited as Page on Wills). Appellant argues that where a will evidences a careful attempt to dispose of the entire estate, the court should carry out that intention despite testator's having overlooked a contingency which actually occurred. *In re Estate of Soesbe,* 58 Wn.2d 634, 364 P.2d 507 (1961).

Respondent counters, however, that when a will is clear and unambiguous on its face, the court should not apply rules of construction and interpretation. *Harrell v. Rutherford,* 40 Wn.2d 171, 241 P.2d 1171 (1952); *In re Estate of Williamson,* 38 Wn.2d 259, 229 P.2d 312 (1951). He contends the will plainly conditions appellant's rights on the parents having predeceased testatrix; that condition not having occurred, appellant cannot take. *Appeal of Geisinger,* 1 Mona. 600, 17 A. 222 (Pa. 1889).

In *Harrell v. Rutherford, supra,* cited by respondent, appellants challenged the clause "to whom I am engaged to be married, as soon as I can legally do so," claiming ambiguity and seeking a construction of the will that would have made marriage a condition precedent to an effective devise. We sustained the trial court's finding that the will was not ambiguous. In invoking the rule against construction of an unambiguous will, we determined that the will evidenced testator's intent that marriage was not a condition precedent to an effective devise.

In *In re Estate of Williamson, supra,* cited by respondent, the issue arose because testatrix had not directed when payment of income to beneficiaries of the estate, which was to be put in trust, was to begin. Further, she had not provided for payment of the expenses of administration or

of the federal estate tax. We observed that the will was unambiguous and that the intention of the testatrix could be determined from the will as a whole. Thereafter we held that the testatrix intended, in accordance with the general rules of law, that the income be paid to the beneficiaries commencing at the time of her death and that the expenses and taxes were to be paid out of the corpus of the estate.

In *Harrell* we emphasized the exclusion of extrinsic evidence to determine the testator's intent because the will was unambiguous. In *In re Estate of Williamson* we said there was no reason to apply rules of interpretation and construction to an unambiguous will. Nevertheless, in each case we found it necessary to apply general rules of construction to determine the testator's intent, *i.e.*, we construed the will as a whole from the language used. Thus, it can be said that the rules of interpretation and construction which courts shun in the context of unambiguous wills are those which are peculiarly applicable in the context of ambiguous wills, as opposed to general rules of construction which courts must always apply in determining a testator's intent. For example: courts hold that extrinsic evidence will be admitted to determine a testator's intent in the case of ambiguous wills. *In re Estate of Torando*, 38 Wn.2d 642, 645, 228 P.2d 142, 236 P.2d 552 (1951); *In re Estate of Bauer*, 5 Wn.2d 165, 173-74, 105 P.2d 11 (1940). On the other hand, extrinsic evidence will not be admitted in the construction of unambiguous wills. *Carney v. Johnson*, 70 Wn.2d 193, 196, 422 P.2d 486 (1967); *Harrell v. Rutherford, supra; German-American State Bank v. Godman*, 83 Wash. 231, 241, 145 P. 221 (1915); 4 Page on Wills § 32.5 (rev. ed. 1961). However, both rules are, as are all rules of construction, supportive of and subordinate to the court's primary duty of determining the intent of the testator and giving it effect. *Kjosness v. Lende*, 63 Wn.2d 803, 807, 389 P.2d 280 (1964); *In re Estate of Lidston*, 32 Wn.2d 408, 418, 202 P.2d 259 (1949).

In short, all wills present a problem of construction. Merely to say that a will is unambiguous does not relieve a

court of the obligation to determine its meaning and legal effect. Even in the cases cited by respondent, where the court found no ambiguity and invoked the rule against construction, it was still necessary to construe the testator's intent from the language used in the will and to give effect thereto.

■ Thus, where clear and unambiguous language is inconsistent with other provisions of a will, the court will apply general rules of construction to assist it in determining the testator's intent, rather than adhere rigidly to rules of construction that forbid construction of clear and unambiguous language. *In re Estate of Tipp,* 54 Wn.2d 585, 590-91, 343 P.2d 566 (1959).

In the case at bar both parties concede that the will's language is unambiguous. The problem arises because the testatrix failed to anticipate that her parents would renounce their right to take under the will. She provided no alternative distribution to cover that eventuality. Respondent urges us to apply the rule against construing unambiguous language, while appellant urges us to apply the rule that the testatrix is presumed to have disposed of her entire estate so as not to die intestate. Neither rule of construction standing alone, however, is controlling.

Our paramount duty in construing wills is to give effect to the testator's intent. *Carney v. Johnson,* 70 Wn.2d 193, 197, 422 P.2d 486 (1967); *In re Estate of Douglas,* 65 Wn.2d 495, 499, 398 P.2d 7 (1965); *In re Estate of Lidston, supra.*

■ The following rules of construction guide us in the performance of that duty, in addition to those already discussed:

1. The testator's intent must be gathered from the will as a whole. Specific provisions must be construed in light of the entire document. *In re Estate of Magee,* 75 Wn.2d 826, 829, 454 P.2d 402 (1969); *In re Estate of Shaw,* 69 Wn.2d 238, 241, 417 P.2d 942 (1966); *In re Estate of Johnson,* 46 Wn.2d 308, 312, 280 P.2d 1034 (1955).

2. Whenever possible, the actual intent of the testator should be ascertained from the language of the will itself,

unaided by extrinsic facts. *Kjosness v. Lende,* 63 Wn.2d 803, 807, 389 P.2d 280 (1964); *In re Estate of Lemon,* 47 Wn.2d 23, 26, 286 P.2d 691 (1955); *Horton v. Board of Educ.,* 32 Wn.2d 99, 109, 201 P.2d 163 (1948).

3. There is a presumption in favor of testacy and against intestacy. *In re Estate of Lidston, supra; In re Estate of Lotzgesell,* 62 Wash. 352, 357, 113 P. 1105 (1911).

4. The presumption favoring testacy is stronger where the language of a residuary clause is used. *In re Estate of Quick,* 33 Wn.2d 568, 573, 206 P.2d 489 (1949); *see also Edwards v. Edwards,* 1 Wn. App. 67, 76, 459 P.2d 422 (1969).

5. While the presumption favors testacy, the court is not relieved of its obligation to construe the language of a will according to the legal effect of the words used. *In re Estate of Searl,* 29 Wn.2d 230, 236, 186 P.2d 935, 173 A.L.R. 1247 (1947).

6. Where the testator's intent is clearly manifest from the whole will, and violates no rule of public policy or positive law, technical rules of construction may not be invoked to defeat such intent. *In re Estate of Soesbe,* 58 Wn.2d 634, 636, 364 P.2d 507 (1961); *Bank of Cal., N. A. v. Ager,* 7 Wn.2d 179, 191, 109 P.2d 548 (1941).

7. Where a will evidences a careful attempt to dispose of the testator's entire estate with a view to all possible contingencies, and a contingency occurs which was not contemplated, the court will give effect to the testator's intent gathered from the instrument as a whole. *In re Estate of Soesbe, supra; cf. Cotton v. Bank of Cal.,* 145 Wash. 503, 507, 261 P. 104 (1927).

The will of Enid Riemcke, taken as a whole, evidences an intent to dispose of her entire estate, in order of preference, to her parents, then to appellant, and finally to her cousins. It clearly expresses her intent, consented to by respondent, that he take nothing thereunder. Her intent is expressed in the language of the will without the necessity of resorting to extrinsic evidence. It clearly gives rise to the presumption that she intended to dispose of her entire estate and

did not intend to die intestate as to any portion thereof. This presumption is strengthened by the fact that the language used is the language of a residuary clause.[1]

Although the rule that requires us to construe the language of a will according to its legal effect might appear to support respondent's position, an analysis of its application convinces us that the rule is not applicable to the type of situation presented here.

*In re Estate of Searl*, 29 Wn.2d 230, 186 P.2d 913, 173 A.L.R. 1247 (1947) appears to be the only case in which we have applied the rule. In *Searl* the wife's will provided that, after payment of debts, expenses of last illness and funeral expenses, all the rest, residue and remainder of her estate would pass to her husband, but in the event her husband and she met "death by accident or otherwise at the same time or approximately the same time," then all the residue and remainder would pass to Anna Conwell, sister of the testatrix. The husband's will was identical except the wife was the primary legatee. Both died of natural causes but the wife predeceased her husband by 47 days. The trial court ruled that the Searls had not died at "approximately" the same time and decreed distribution of the wife's estate to the administrator of the husband's estate. The two estates were consolidated for hearing. Thereafter, the trial court decreed distribution, of the husband's enlarged estate, by intestacy to the brothers and sisters of Mr. Searl. Anna Conwell, Mrs. Searl's sister, appealed claiming that she was entitled to the proceeds of both estates because:

> Mr. and Mrs. Searl intended that all of the property they owned be enjoyed by the survivor, but that, if the survivor failed to make a new will, then all of the property

---

[1]Technically a residuary clause is one which follows provisions for specific legacies, taxes, debts and costs of administration. *In re Estate of Magee*, 75 Wn.2d 826, 289, 454 P.2d 402 (1969). But whether the clause in this will is technically a residuary clause is immaterial. The important consideration is that the testatrix used language common to that found in residuary clauses. It is the use of such language that strengthens the presumption of testacy.

was to go to Mrs. Conwell; and that, as Mr. Searl did not make a new will, the word "approximately," as used in the wills, should be construed to include the period between Mrs. and Mr. Searl's deaths.

*In re Estate of Searl, supra* at 235. After an exhaustive review of the cases, we concluded that the period of 47 days could not be construed as coming within the meaning of the word "approximately" as employed in its customary sense in will clauses. We invoked the rule that the words of the wills must be given their legal effect.

*In re Estate of Searl* is not apposite. The Searls' wills, taken as a whole, did not evidence an intent to dispose of their property under all circumstances. They provided for only two situations: death of one spouse survived by the other, or death of both spouses simultaneously. No provision was made for death of the *surviving* spouse at a period in time separated from the death of the *predeceasing* spouse. It was this last event that occurred. Since the wills were not "mutual", the surviving spouse was free to make a new one. Under this limiting circumstance, it would have been inadvisable to treat the failure to provide for such a contingency as a mere oversight by the testator.

Enid Riemcke, unlike Mr. and Mrs. Searl, clearly attempted to provide for all circumstances. She named two alternative sets of legatees and devisees in the event the primary legatees and devisees predeceased her. Granted, she overlooked the possibility of renunciation, but that omission does not detract from the clarity of her overall plan.

It could be urged that in *Searl* we gave legal effect to the term "approximately" and thus we should likewise give legal effect to the condition that Mrs. Riemcke's parents predecease her in order for appellant to take. There is a distinction, however, between giving legal effect to the language used and applying technical rules of construction to a contingent interest so as to defeat the obvious intent of the testator, where that intent violates no rule of public policy or positive law.

Respondent contends that appellant's interest is dependent upon the condition precedent that the parents predecease testator and the condition not having occurred, appellant's interest did not vest. A similar assertion was made in *In re Estate of Soesbe,* 58 Wn.2d 634, 364 P.2d 507 (1961). There the testator had, *inter alia,* created a trust in which his sister was the life beneficiary and his widow the remainderman. The widow predeceased the sister, and the testator's heirs claimed that the widow should have the remainder only if she survived the sister, and since the sister survived the widow, the remainder reverted to the estate of the testator and passed by intestacy to his heirs. The widow's heirs urged that the will had created a vested remainder. We stated that the technical rules of remainders would not be allowed to set aside the supreme rule that in interpreting a will it is the testator's intent that controls. The court observed, at page 637, that the testator had provided:

> three separate schemes depending upon (1) whether his wife and sister survived him, (2) whether his wife predeceased him, or (3) whether his wife and sister predeceased him. The only uncontemplated contingency was the one which developed—that his wife, as a remainderman of a life estate, would die before the termination of the life estate.

We discerned, in this pattern, the testator's intent to distribute his entire estate and not allow any portion thereof to pass by intestacy. As a result, we held that the remainder passed to the widow's heirs.

*In re Estate of Soesbe, supra,* is directly in point. Like the will in *Soesbe,* Mrs. Riemcke's will had three separate schemes for distribution but overlooked the one contingency which in fact developed. Although the Riemcke will is not as complex as that in *Soesbe,* such is not a distinguishing factor. It is not the complexity of the will that enables a court to determine the testator's intent and thus give it effect where an uncontemplated contingency occurs. The critical consideration is whether the will, as a whole,

evidences the testator's intent to dispose of his entire estate with a view to all possible contingencies. A complex will weighs in favor of that intent, but that is not to say that a simple, straightforward will cannot equally express such an intent.

The will before us has a plan of distribution more complete than that in *Soesbe*. From the plan we can discern the testatrix's intent to dispose of her entire estate in all circumstances. We will give effect to that intent despite the fact that she did not specifically contemplate the one event that actually occurred. To do otherwise would lead to an unwarranted application of technical rules of construction when no public policy or rule of positive law requires it.

The rule we apply is neither novel nor unique. It has been applied under similar circumstances in *Howland v. Stone Foundation*, 17 Ohio Misc. 179, 243 N.E.2d 892 (1969); and *Mercantile-Commerce Bank & Trust Co. v. Binowitz*, 238 S.W.2d 893 (Mo. App. 1951), as well as in *Soesbe*. Likewise, in the analogous situation of a surviving spouse renouncing his share under a will and electing to take against the will, courts endeavor to ascertain the testator's primary intention and to carry it into effect as far as possible with a minimum disturbance of the will's general plan. *See* 5 Page on Wills § 47.44 (rev. ed. 1962).

Respondent and the trial court relied on *Appeal of Geisinger*, 1 Mona. 600, 17 A. 222 (Pa. 1889). There the will made a specific bequest to the children of the testator's late sister and gave the residue to his wife if she survived. If she did not, the residue was to pass in equal shares to three legatees or their children per stirpes. The wife renounced, and the court held that the property passed by intestacy because the express condition of survivorship by the alternative legatees had not occurred. The case is old and has acquired no following. Further, as we indicated earlier, it makes more sense to give effect to the testator's intent, as construed from the will as a whole, than to apply technical rules regarding the construction of contingent interests to reach a result clearly contrary to the expressed intent.

We are not unmindful of the rule, followed in many jurisdictions, that in the absence of a statute or of a clearly disclosed intention or justified construction to the contrary, where there is a gift of the residuary estate to two or more persons and one of them renounces, the share affected does not inure to the other residuary beneficiaries in augmentation of their shares, but passes by intestate succession. *See* 6 Page on Wills § 49.12 (rev. ed. 1962); Annot., 36 A.L.R.2d 1117, 1118 (1954) *supplementing* Annot., 139 A.L.R. 868 (1942) and Annot., 28 A.L.R. 1237 (1924). Reference to the foregoing citations reveals, however, that the rule is applied in those situations where the residuary beneficiaries are co-takers and not alternative takers, as in this case. In the cited cases the rule causes only partial intestacy. In such circumstances it may well be that where a portion of a will is renounced, it would be difficult for a court to determine a testator's intent in disposing of the lapsed share. But in the case of alternative takers, as in this case, the lapse would cause total intestacy. This is not favored.

Since the will before us provides for alternative takers, we find no difficulty in determining testatrix's intent. It is more reasonable, remembering the primary duty of giving effect to the testatrix's intention, that those persons named in the will as alternative takers were preferred by the testatrix *against the rest of the world.*

Nor does the rule followed in *In re Estate of Smith,* 49 Wn.2d 229, 299 P.2d 550, 63 A.L.R.2d 299 (1956) call for a different result. There a lapsed residuary bequest passed by intestacy in the absence of alternative takers. Here, unlike *Smith,* the will provides for alternative takers.

The complete plan of distribution, together with the express provision disinheriting respondent, makes it perfectly clear that testatrix intended to leave her estate to appellant in the event her parents did not take. Her parents having renounced, we give effect to that intention by decreeing distribution to appellant.

In addition to awarding respondent his intestate share of decedent's estate, the trial court awarded him $6,000 in lieu

of homestead. RCW 11.52.010 provides that if no homestead has been claimed, property, either separate or community, should be set aside to the surviving spouse as an award in lieu of homestead. But RCW 11.52.024, which was in effect at the death of the testatrix, provided that such awards "shall not be taken from separate property of the deceased *which is otherwise disposed of by will*." Although an amendment to section .024, which became effective subsequent to the death of the decedent but prior to the hearing on the award, does not contain the quoted portion of the prior statute, it does provide that "the court shall not award more property than could be awarded under the law in effect at the time of the death of the deceased spouse." Therefore, under either the prior or amended versions of the statute an award in lieu of homestead cannot be made out of decedent's separate property because it has been "otherwise disposed of by will." *See In re Estate of Wind*, 32 Wn.2d 64, 69, 200 P.2d 748 (1948).

The trial court approved the final accounting except for the final tax liabilities. It ordered a supplemental accounting to determine the amount to which appellant is entitled for reimbursement. She is entitled to reimbursement for all monies loaned the estate for the payment of the state inheritance and federal estate taxes against which shall be set off the $1,850 borrowed from the estate by appellant. The amount of full reimbursement together with interest on the respective amounts loaned and borrowed will be determined after the supplemental accounting to be made upon remand of the case.

Appellant has requested additional executrix and attorney's fees to cover the cost of this appeal. However, expenses incurred by an executrix of a nonintervention will in defending a suit for an accounting and distribution, brought by parties claiming part of the estate, are not properly chargeable against the estate when the executrix is the sole beneficiary thereunder. The expenses have been incurred in her own interest, not as an executrix. *In re Estate of Thompson*, 156 Wash. 486, 287 P. 21 (1930); *In re*

*Estate of Lotzgesell,* 62 Wash. 352, 356, 113 P. 1105 (1911). This appeal has resulted in no benefit to the estate. The request is denied.

Finally, appellant challenges the award to respondent of attorney's fees incurred in contesting the final accounting. Respondent's action resulted in an increase of the estate's assets by the value of 24 shares of General Motors stock and brought to light certain accounting irregularities. Thus, under RCW 11.76.070 the trial court properly exercised its discretion in making the award. *See In re Estate of Hamilton,* 73 Wn.2d 865, 868-69, 441 P.2d 768 (1968).

The judgment of the trial court is reversed and the case remanded for further proceedings consistent with the views expressed herein.

HAMILTON, C.J., FINLEY, ROSELLINI, NEILL, HALE, WRIGHT, and UTTER, JJ., and RYAN, J. Pro Tem., concur.