[No. 571-2.    Division Two.    August 8, 1972.]

*In the Matter of the Estate of* MARCO J. HEIDNER,
*Deceased.*
THE DEPARTMENT OF REVENUE, *Appellant,* v. FRANCES
CHICK HEIDNER *et al., Respondents.*

*Slade Gorton, Attorney General, Timothy R. Malone, Senior Assistant,* and *Henry W. Wager, Assistant,* for appellant.

*John J. Reha, Jr.,* and *Eisenhower, Carlson, Newlands, Reha, Elliott & Henriot,* for respondents.

PETRIE, C.J.—This is a dispute between the Inheritance Tax Division of the Department of Revenue and the executors of an estate as to the amount of state inheritance tax due. More precisely, the issue is whether or not, for inheritance tax purposes, the amount of federal estate tax paid may be deducted from the net taxable estate prior to calculating the taxable value of the interest of a life estate under a trust established by the residuary clause of a will.

Marco J. Heidner died testate on March 6, 1966. After making specific bequests to his wife, his will placed "all the rest residue and remainder of my estate" (which was all separate property) in trust, directing that all of the net income of said trust estate be paid to his wife during her lifetime. There were no powers for the trustee to invade principal during the widow's lifetime, the principal and income earned thereafter being used for charitable purposes.

The parties have agreed that the estate paid the total sum of $128,635.62 (exclusive of any interest thereon) in federal estate taxes; that the net separate (taxable) estate which is subject to the life estate is $1,145,024.83; that the statutorily required assumed interest rate is 3.5 percent; and that the longevity factor to be applied in computing the present value of the life estate is 11.4280. Expressed figuratively, the Department of Revenue contends the taxable value of the life estate should be computed as follows:

$$\$1,145,024.83 \times 3.5\% \times 11.4280 = \$457,987.04$$

The executors of the estate contend that the taxable value of the life estate should be computed as follows:

$$(\$1,145,024.83 - 128,635.62) \times 3.5\% \times 11.4280 = \$406,535.33$$

We agree with the position of the Inheritance Tax Divi-

sion, and accordingly reverse the judgment of the trial court, which had agreed with the executors.

■ All parties concede the validity of the rule enunciated in *In re Estate of Carlson*, 61 Wn.2d 359, 378 P.2d 435 (1963)—that the amount of the inheritance tax due the State of Washington must be computed as provided in RCW 83.04 without regard to the payment of any federal estate tax. The executors contend that deducting the amount of the federal estate tax from the net taxable estate prior to calculating the present worth of the widow's life estate does not violate the *Carlson* mandate—it merely shifts the burden of the state inheritance tax due, with regard to the federal estate taxes paid, to the remainderman as required by Washington law.

The succinct answer to the contention of the executors is that in the absence of an apportionment statute, and in the absence of a contrary testamentary expression, the ultimate burden of the federal estate tax falls upon the residuary estate. *Seattle-First Nat'l Bank v. Macomber*, 32 Wn.2d 696, 203 P.2d 1078 (1949). Furthermore, when a trust is established under a residuary clause the burden of the federal estate tax falls upon the corpus of the trust and there may be no subsequent shifting of that burden, absent a testamentary expression to the contrary, between the life tenant and the remainderman. *In re Estate of Williamson*, 38 Wn.2d 259, 229 P.2d 312 (1951). Under the rule in *Williamson* the burden is shared between the life tenant and the remainderman to the extent that the corpus is diminished —the amount of the diminution neither being available to produce income during the life of the tenant nor being available for distribution to the remainderman at termination of the trust.

The method advanced by the executors to calculate the taxable value of Mrs. Heidner's life estate for state inheritance purposes would, in the final analysis, necessarily result in an interpretation of our state inheritance taxing system as a device through which the entire ultimate burden of the federal estate tax would be effectively shifted to

the remainderman. This would effectively violate the rule in *Williamson*. We do not believe such an interpretation is warranted. Hence, it must be rejected.

Although we have expressed our opinion in this relatively concise fashion, the nature of the problem and its resolution require a more complete exploration because of the continuing, yet alternating, citation and development of two seemingly conflicting lines of cases describing the basic nature of our state inheritance tax laws. On the one hand are the cases which declare that our inheritance tax laws constitute merely a tax on the privilege of receiving a testamentary bequest—purely and simply an inheritance tax. *In re Estate of Corbin*, 107 Wash. 424, 181 P. 910, 7 A.L.R. 685 (1919); *In re Estate of Birkeland*, 56 Wn.2d 441, 353 P.2d 667 (1960); *In re Estate of Patten*, 69 Wn.2d 427, 419 P.2d 157 (1966). On the other hand are the cases which declare that our inheritance tax system, at least since 1935, is both an inheritance tax system and an estate tax—an impost or excise on the privilege of transmitting property at death as well as on the privilege of the devisee to take. *State v. Clark*, 30 Wash. 439, 71 P. 20 (1902); *In re Estate of Henry*, 189 Wash. 510, 66 P.2d 350 (1937); *In re Estate of Lloyd*, 53 Wn.2d 196, 332 P.2d 44 (1958); *In re Estate of Carlson*, 61 Wn.2d 359, 378 P.2d 435 (1963).

■ The two lines of cases do not always produce conflicting results. The problem arises when, as here, one of the parties relies too heavily upon the expression in *Birkeland* as follows:

> Here, where the tax is upon the privilege of succession, the tax is upon the legatee, and it is the property's *value to him* that is the basis for valuation.

(Italics ours.) *In re Estate of Birkeland, supra* at 444.

The position of the executors in the case at bench is quite simply (and understandably) that Mrs. Heidner will receive no value—no income—from that portion of the estate which has been used to pay the federal estate tax. Therefore, the value of the estate to her is the net taxable estate (which includes the amount of the federal estate tax) *less*

the amount of the federal estate tax paid. Indeed, we might add another dimension to her contention. The residue of an estate is defined as that part remaining after the payment of specific legacies, *taxes*, debts, and costs of administration. *In re Estate of Magee*, 75 Wn.2d 826, 454 P.2d 402 (1969). Her husband's will gave Mrs. Heidner a life income interest in the residue, which by definition excluded any taxes paid. Hence, the argument flows, the amount of the federal estate tax did not pass to her—and she should not be required to bear any portion of the tax thereon.

The difficulty with this position is that it is the same contention which was rejected by the court in the *Carlson* case, recently reaffirmed in *In re Estate of Toomey*, 75 Wn.2d 915, 454 P.2d 420 (1969). The executors of Mr. Heidner's estate contend, however, that the *Carlson* case is not applicable to the case at bench, insisting instead that their efforts herein are directed solely at redistributing the burden of the tax away from Mrs. Heidner who will never receive the income from any funds paid to the federal government as an estate tax. We have already pointed out that the remainderman will never receive any of those funds either. More importantly, however, it is readily apparent that the *Carlson* case does apply; at least indirectly, to the factual situation herein. The value of the *remainder* interest, for inheritance tax purposes, is determined by deducting the computed present value of the life income (derived through use of mortality tables and discounted values promulgated by the Insurance Commissioner) from the value of the entire bequest. RCW 83.16.020. Thus, although neither the life tenant nor the remainderman receives his bequest upon distribution of the probated estate, the present worth of the life income plus the present worth of the remainder interest does add up to the full amount of the bequest.

The expression in *Birkeland*—that the basis for valuation as to any legatee is "the property's value to him"—means simply that the property's value to any given legatee is that value which he shall be deemed to have received. That was

made eminently clear in *In re Estate of Sherwood,* 122 Wash. 648, 211 P. 734 (1922) when the court declared at page 659:

But clearly it is within the power of the legislature to declare, for the purposes of taxation, *what shall be deemed to have been received* by those succeeding to the property; that is, it is within the power of the legislature to say that the whole estate passes to the successor for the purposes of taxation, and then provide that certain parts of it shall be devoted to uses which prevent it from *actually* passing.

(Italics ours.)

■ Our search narrows, therefore, to interpretation of the various statutes in order to ascertain what the legislature deemed the legatee received because of the death of the testator.

The basic statute to be interpreted is RCW 83.16.020, the pertinent portions of which provide as follows:

When the estate of a deceased person is subject to an inheritance tax, and there is an annuity, life estate, or an estate for a term of years given to one or more persons and the remainder to another or others, the entire estate shall be appraised as other estates are required to be appraised by the laws of this state. The value of the annuity, life or term estate shall be determined in accordance with the rules, methods, and standards of mortality and value that are set forth in tables to be furnished by the insurance commissioner of this state upon request of the tax commission based upon such mortality tables as is from time to time required by law for use by life insurance companies in this state in determining non-forfeiture values under ordinary life insurance policies, except that the rate of interest used in computing the present value of the annuity, life or term estate shall be three and one-half percent per annum, and the value of the remainder interest shall be determined by deducting such computed value from the value of the entire property.

Thus, for inheritance tax purposes, whenever a life estate is created from the residue of an estate, the taxable valuation thereof is established by the application of several

statutorily assumed factors: (1) the entire estate is first appraised as in the case of other estates, *i.e.,* "the fair market value thereof on the date of the death of the decedent" (RCW 83.16.010); (2) the fair net value for inheritance tax purposes is ascertained by deducting from the appraised value only those items specifically enumerated in RCW 83.04.013, *and no more* (*In re Estate of Toomey, supra*); (3) the net value of the estate, *as thus determined,* will be assumed to be available to the life income beneficiary for a period of years equivalent to the life expectancy of the legatee as determined by mortality tables used by the Insurance Commissioner; (4) the net value of the estate (as determined by (1) and (2) above) will be assumed to earn interest at the rate of 3.5 percent per annum for a period of years as determined by (3) above; (5) the present value of the assumed return on the net value is ascertained by discounting the assumed annual return at the rate of 3.5 percent per annum; (6) the present value of the remainder interest, for inheritance tax purposes, is calculated by deducting the assumed present value of the life estate (as determined by (1) through (5) above) from the value of the entire bequest which the testator made the subject of life estate and remainderman interests.

It seems apparent that the value which the life beneficiary is deemed to have received under the foregoing statutory scheme does not bear the slightest resemblance to what will actually pass to any given life beneficiary. Hence, we do not concern ourselves with attempting to ascertain what will actually pass to the life beneficiary. Our concern, rather, is to compute the amount of the state inheritance tax "without regard to the payment of any federal estate tax." *In re Estate of Carlson, supra.* So far as the state inheritance tax is concerned, the taxable value of the life beneficiary's estate is calculated as though the federal estate tax did not exist.

The judgment is reversed with direction to calculate the

taxable value of the life estate in accordance with the formula used by the Inheritance Tax Division.

PEARSON and ARMSTRONG, JJ., concur.

Petition for rehearing denied October 2, 1972.

Review denied by Supreme Court November 8, 1972.